John G. MARSHALL, et al.,
Plaintiffs, Appellees,

v.

Jose E. PEREZ ARZUAGA, et al.,
Defendants and Third-Party
Plaintiffs, Appellees.

Avis Rent-A-Car of Puerto Rico, Inc.,
Third-Party Defendant, Appellant.

John G. MARSHALL, et al.,
Plaintiffs, Appellants,

v.

Jose E. PEREZ ARZUAGA, et al.,
Defendants, Appellees.

Nos. 86–1006, 86–1007.

United States Court of Appeals,
First Circuit.

Sept. 1, 1987.

Charles A. Cordero with whom Cordero, Colon & Miranda, Old San Juan, P.R., was on brief, for Avis Rent-A-Car of Puerto Rico, Inc.

Herbert W. Brown, III with whom Peter J. Satz, and Calvesbert & Brown, San Juan, P.R., were on brief, for John G. Marshall.

Before CAMPBELL, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

On August 23, 1982, John G. Marshall and his wife rented a 1982 Dodge Aries K from the Avis Rent-A-Car terminal located near the Luis Munoz Marin International Airport in San Juan, Puerto Rico. Marshall drove the vehicle without problem until August 27, 1982, when he hit a pothole, causing the right front tire to go flat. Marshall changed the tire with the "balloon" type spare, and subsequently returned to the Avis terminal for a replacement tire. The company changed both front tires but neither of the back tires; at trial, evidence demonstrated that the rear tires were original equipment, having been on the car for over nine months and 15,000 miles.

After Avis's service personnel replaced the two front tires, Marshall drove from the rental facility onto the airport exit road, a two-lane highway leading from the airport. Marshall testified that shortly after he turned onto the exit road, he felt the car "vibrating from the back end." Unaware of the source of the vibration, he continued to drive for approximately another 200 yards. At that point, the vibration was, in Marshall's words, getting "really bad." Consequently, he stopped the car on the far right side of the right-hand lane, unable to pull over any further because the highway had neither a shoulder nor a breakdown lane. He had travelled less than a mile from the Avis facility.

Marshall then got out of the car to investigate the cause of the disability, allegedly first checking for oncoming traffic. When he reached the left rear tire, he noticed that it was "just about completely flat." After kicking and cursing the tire, he began walking back toward the center of the car. He was immediately struck and injured by a passing car driven by Jose Perez Arzuaga. The accident occurred on a straight road, during daylight and, by Marshall's admission, when conditions were clear and "visible."

At trial, Perez Arzuaga testified that prior to the accident, he had been driving in the right lane of the airport exit road. He stated that when he first saw Marshall's car, he believed that it was moving. Not until he was approximately 30 feet away from the disabled vehicle did Perez Arzuaga realize that the car was stationary. He then attempted to move into the left-hand lane, but could not do so because a blue car was rapidly approaching in that lane. When Perez Arzuaga tried to pass between the blue car on the left and Marshall's disabled vehicle on the right, he miscalculated, hitting both Marshall and the left rear side of the rental car. At trial, Perez Arzuaga testified that he did not see Marshall until the moment the accident occurred.

On April 23, 1983, John Marshall, his wife, and their two minor children initiated this negligence action against Perez Arzuaga in the United States District Court for the District of Puerto Rico.[1] Federal jurisdiction was predicated on the diversity of the parties, 28 U.S.C. § 1332 (1982). Plain-

1. Marshall's wife was in the automobile at the time of the accident, but apparently suffered no physical injuries. The complaint alleged that Perez Arzuaga's negligence deprived her of,

tiffs subsequently filed an amended complaint that included Avis Rent-A-Car of Puerto Rico as a codefendant and joint tortfeasor. The theory underlying plaintiffs' suit against Avis was that the company had negligently leased to Marshall a car with a defective and worn tire, thereby putting him at risk for an accident of the type that occurred. After seven days of trial, the jury returned a verdict for plaintiffs, placing 40 percent of the responsibility for the accident on Avis, and 60 percent on Perez Arzuaga (it concluded that John Marshall had not been contributorily negligent). The jury awarded damages totalling $750,000.

Avis appeals from the judgment entered against it below, claiming that the district court erred by (1) refusing to grant a directed verdict in the company's favor, (2) allowing one of plaintiffs' witnesses, Gerald Rosenbluth, to testify as an expert, and (3) failing to strike certain of Rosenbluth's statements. Plaintiffs also appeal, contending that the district court improperly refused to assess attorneys' fees against Perez Arzuaga. We affirm.

## I.

Avis contends the district court erred in refusing to direct a verdict in favor of the company. Avis insists that, as a matter of law, the accident was not reasonably foreseeable; thus, the issue never should have reached the jury. We disagree.

### A. *Foreseeability*

The substantive law of Puerto Rico provides the rule of decision in this diversity case.[2] Under the case law developed in the Commonwealth, tortious liability requires both "fault"[3] and "the necessary causal nexus between the wrongful act and the

damage sustained." *Jimenez v. Pelegrina*, 112 P.R.R. 881, 885 (1982). The "causal nexus" principle limits a party's liability for hazards flowing from its negligence to those hazards that could be " 'anticipated by a prudent person.' " *Pacheco v. Puerto Rico Water Resources Authority*, 112 P.R. S. Ct. Official Translations 369, 372 (1982) (quoting *Hernandez v. The Capital*, 81 P.R.R. 998, 1005 (1960)). In Puerto Rico, just as in the common law jurisdictions, foreseeability is the touchstone of extracontractual liability. *Rivera v. Cruz*, —— P.R.R. ——, 87 J.T.S. 51 (May 20, 1987). Foreseeable events are those that may " 'be calculated by a prudent conduct alert to eventualities that may be expected in the course of life.' " *Jimenez*, 112 P.R.R. at 888 (quoting Supreme Court of Spain, Judgment of November 9, 1949); *see also Torres Trumbull v. Pesquera*, 97 P.R.R. 329, 335 (1969); *Widow of Andino v. Puerto Rico Water Resources Authority*, 93 P.R.R. 168, 178–79 (1966).

Avis argues it is not liable for Marshall's injuries because it could not have foreseen the exact sequence of events that preceded the accident. But the Supreme Court of Puerto Rico has made clear that this argument, which suggests only prophets could be found tortiously liable, misunderstands the requirement of foreseeability:

> The rule of foreseeability does not mean that the precise risk or the exact result which was encountered should have been foreseen. The essential factor is to be under a duty to foresee, in a general way, consequences of a particular type. It is no defense to allege that the precise course or the full extent of the consequences could not be foreseen, the consequences being of such kind, which in fact happened.

*Gines v. Puerto Rico Aqueduct and Sewer Authority*, 86 P.R.R. 490, 496 (1962) (citing

---

among other things, consortium, society, and services. The two children, though not in the car when the accident occurred, sought recovery for losses such as deprivation of pecuniary support and expectancy of inheritance.

**2.** *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** The evidence was sufficient to permit a finding that Avis had negligently leased to Marshall a car with a defective tire. Thus, in considering whether the district court properly refused to direct a verdict in Avis's favor, we shall assume Avis was negligent.

2 F. Harper & F. James, *The Law of Torts* 1147 (1956)); *see also Widow of Andino v. Puerto Rico Water Resources Authority,* 93 P.R.R. 168, 177–79 (1966) (relying on *Gines*).

Among the "consequences of a particular type" for which a negligent actor is legally responsible are those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.[4] *See Widow of Andino,* 93 P.R.R. at 178 (defining "intervening cause" as a cause of an injury that "comes into active operation in producing the result after the actor's negligent act or omission has occurred"). A negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have "directly" caused the harm. *Id.* An "unforeseen and abnormal" intervention, on the other hand, "breaks the chain of causality," thus shielding the defendant from liability. *Id.* While as a rule intervening negligent acts by third parties are more foreseeable than intentionally harmful acts, *see Estremera v. Inmobiliaria, Inc.,* 109 P.R.R. 1150, 1156 (1980) (citing W. Prosser, *The Law of Torts* 282–83 (4th ed. 1971)), the ultimate determinant of liability is always foreseeability itself. *Compare Negron v. Orozco,* 113 D.P.R. 921 (1983) (defendant liable because intervening act, though intentional and criminal, was reasonably foreseeable) *with Rivera v. Cruz,* —— P.R.R. ——, 87 J.T.S. 51 (1987) (no liability since defendant had no reason to anticipate intervening criminal act). So, the question in this case is whether Perez Arzuaga's negligent driving, which indisputably "caused" Marshall's injuries, was the type of risk that Avis should have foreseen when it rented Marshall a car with a defective tire.

Despite this established intervening cause doctrine, Avis relies heavily on *Valle v. American International Insurance Co.,* 108 P.R.R. 735 (1979), which it invokes for the proposition that when an injury is due to "concurrent" causes, one cause only— the "efficient" cause—must be deemed the legal cause of the damage or injury. *Id.* at 739. Thus, according to Avis, Perez Arzuaga must be solely liable for Marshall's injuries, since his negligent driving was the "decisive fault." *Id.*

We believe that *Valle* must be limited to its own facts. Neither prior nor subsequent case law in Puerto Rico adopts this restrictive notion of efficient causation. One recent example is *Negron v. Orozco,* 113 D.P.R. 921, where the police department of Puerto Rico was held liable for a shooting death that occurred in the police station. Both the victim and the assailant, an off-duty officer, were being detained as a result of a heated argument, during which the officer had threatened to shoot the victim. The Supreme Court of Puerto Rico explicitly rejected the Commonwealth's contention that the officer's criminal act (for which the Commonwealth was not liable) was the sole legal cause of the death: "The efficient and decisive cause of [decedent's] death is *a combination* of [the officer's] action, shooting his antagonist, and the omission of the police officers in charge of keeping order and security in the police station.…" 113 D.P.R. at 921 (emphasis supplied); *see also Widow of Andino,* 93 P.R.R. at 178 ("a defendant is liable if his negligence is a proximate cause of the damage although it might not be *the sole* proximate cause of such damage") (emphasis in original).

## B. *Judge and Jury*

[1] Here, the district court allowed the jury to determine whether Avis could reasonably have foreseen the accident that caused Marshall's injuries.[5] Referring this issue to the jury was correct under federal common law recently set forth in this circuit:

The question of proximate causation is sometimes for the court and sometimes

---

4. This rule can also be expressed in the language of risk creation: "Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence." *Pros-* *ser & Keeton on Torts,* § 44, at 303 (W. Keeton 5th ed. 1984).

5. Defendants do not claim the court's jury instructions were improper.

for the jury. Not only ordinary fact questions, but also "evaluative applications of legal standards (such as the concept of legal 'foreseeability') to the facts" are properly jury questions. In any case where there might be reasonable difference of opinion as to evaluative determinations ... the question is one for the jury.

*Springer v. Seamen,* 821 F.2d 871, 876 (1st Cir.1987) (citing *Prosser & Keeton on Torts* 320–21 (W. Keeton 5th ed. 1984)); *see also LeBoeuf v. Ramsey,* 503 F.Supp. 747, 758 (D.Mass.1980) ("Applying the legal cause standard to a particular case is a function ordinarily performed by the factfinder.").

█ And it is federal law that must control the division of responsibility between judge and jury here. *See Molinar v. Western Electric Co.,* 525 F.2d 521, 527 (1st Cir.1975). Since Puerto Rico, a civil law jurisdiction, never uses juries in civil cases, there is of course no Commonwealth law on this subject.[6] The Seventh Amendment, however, most decidedly affords litigants in federal court in Puerto Rico the right to trial by jury, *see, e.g., LaForest v. Autoridad de las Fuentes Fluviales de Puerto Rico,* 536 F.2d 443, 446–47 (1st Cir.1976), and it is federal law that must define the contours of that right in this case.

In *Byrd v. Blue Ridge Rural Electrical Cooperative, Inc.,* 356 U.S. 525, 533–40, 78 S.Ct. 893, 898–902, 2 L.Ed.2d 953 (1958), the Supreme Court held that the strong federal interest in the function of the jury, and in preserving the essential character of a federal court, required that in a diversity case the federal rule on this division of duties should prevail over a conflicting state rule. The Court conceded that this result was not necessarily outcome-neutral:

It may well be that in the instant personal-injury case the outcome would be substantially affected by whether the issue ... was decided by a judge or jury. Therefore, were "outcome" the only consideration, a strong case might appear for saying that the federal court should follow the state practice.

But there are affirmative countervailing considerations here.

*Id.* at 537, 78 S.Ct. at 900.

According to the Court, such "affirmative countervailing considerations" as the federal interest in the jury would yield to a conflicting rule of state practice only in the exceptional—and so far hypothetical—case, where the state rule were "intended to be bound up with the definition of the rights and obligations of the parties." *Id.* at 536, 78 S.Ct. at 900. This is not that case. To hold otherwise would countenance an argument that proves too much. For if Puerto Rico's practice of judicially determined damages is deemed to be intimately "bound up" with the substantive rules of tort liability, then—since the practice obtains in all civil cases—the same is true of the whole of Puerto Rico's civil law. And the right to jury trial in diversity cases in federal court in Puerto Rico would be no more.

We share the dissent's concern about the forum shopping our decision apparently invites. It does appear inequitable that successful diversity plaintiffs in federal court in Puerto Rico have their damages determined by a jury, which may be inclined to redistribute from the deep pocket to the shallow, while similarly situated victors in the commonwealth's courts are relegated to judicially determined—and customarily more modest—damages awards. But we have held before that this disparity in dam-

---

**6.** *But cf. Estremera v. Inmobiliaria, Inc.,* 109 P.R.R. 1150, 1158 (1980) (quoting 3 Castan Tobenas, *Derecho Civil Espanol* 195 (10th ed. 1962)):

[T]he difficulty in knowing up to what point one can take the causal relation can never be resolved by abstract rules in a manner that is completely satisfactory, more so, in case of doubt, it should be resolved by the judge based on his convictions and after pondering all circumstances.

This language suggests that a judge's determination of foreseeability in Puerto Rico resembles the type of inquiry common law jurisdictions usually leave to the jury. *See, e.g., Healy v. Hoy,* 115 Minn. 321, 132 N.W. 208 (1911) ("proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case").

ages awards in the federal courts and the commonwealth courts is insufficient to warrant a deviation from the principles of federal common law. *See Laforest*, 536 F.2d at 446–47 (applying federal standard for review of jury verdicts). *Cf. Hanna v. Plumer*, 380 U.S. 460, 466–67, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1964) ("'Outcome-determination' analysis was never intended to serve as a talisman."). And it is by no means clear to us that the sort of forum shopping arguably engendered by the result here—the pursuit not of a preference between two substantive rules, but rather of a preference between two modes of reckoning the consequences of a single rule—is the evil that *Erie* aimed to mitigate. *See Hanna*, 380 U.S. at 475, 85 S.Ct. at 1146 (Harlan, J. concurring) (noting that litigants may have a preference—a perfectly permissible preference—for federal court for any number of reasons, *e.g.*, the relative attraction of the Federal Rules of Civil Procedure).

## C. *The Jury's Conclusion*

Avis's assertion that the district court erred in letting the foreseeability issue go to the jury is tantamount to saying reasonable people could not differ on whether Perez Arzuaga's negligent driving was reasonably foreseeable.[7] *See Springer v. Seamen*, 821 F.2d 871, 876. This position is untenable. Estimation of the types of risks associated with automobile breakdowns, and the incidence of negligent driving in relation to these risks, is appropriately within the province of the jury, the repository of the common sense of the community. Reasonable people— depending, perhaps, on their personal experiences with automobile tires, busy highways, and negligent fellow travelers—may indeed disagree on whether Avis could reasonably have foreseen the unfortunate consequences of its negligence here.[8] But appellant asks us to conclude that reasonable people could

---

**7.** We see no basis for our dissenting colleague's suspicion that the jury may have in effect applied the discredited *"equivalencia de condiciones"* theory of liability here. It is far from obvious that the jury found Avis liable merely because its negligence was among the "concatenation of causes any of which might lead to injury." *See Jiminez v. Pelegrina*, 112 D.P.R. 881, 887 (1982) (discussing the possibility of such an untoward result under the equivalence theory); *accord Prosser & Keeton on Torts* § 41, at 266 (W. Keeton 5th ed. 1984) (noting the same risk under a "but for" causation standard). The jury's conclusion that Perez Arzuaga's negligent driving was the sort of risk reasonably foreseeable by Avis is perfectly consistent with the rule of *"causalidad adecuda,"* the touchstone of which, the dissent concedes, is foreseeability. Of course, it is *possible* that the jury made its decision on an impermissible criterion, such as the equivalency theory, or the deep pocket; but it would hardly be irrational for the jury to have concluded that Perez Arzuaga's intervening negligence was not sufficiently "extraordinary" to cut off Avis's liability. That the district judge—a member of the Puerto Rico bar and, formerly, of its judiciary, *see* note 11, *infra* —denied defendant's motions for directed verdict and judgment n.o.v., further confirms our independent view reached after careful research of Puerto Rico precedent, that the case is fully consistent with Puerto Rico substantive law.

**8.** While the substantive law of Puerto Rico is controlling here, a case from the common law jurisdiction of North Carolina presents facts suf-

ficiently similar to warrant our attention. In *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E.2d 559 (1984), defendant car dealer's negligent servicing of a wheel led to plaintiff's automobile breaking down on a narrow road. While inspecting the damage plaintiff was run over by a negligent driver. The Supreme Court of North Carolina found the trial court had erred in granting the car dealer's motion for judgment n.o.v., citing the "well-settled" rule that the foreseeability of an intervening act was properly for the jury:

> We hold that on the facts of this case a jury might readily find that defendant Haygood could have reasonably foreseen the subsequent acts of Alexander and the resultant harm that occurred on I–85, barely six minutes and 3.5 miles away from the Haygood dealership. Alexander's negligence in driving was, as the Court of Appeals noted, inexcusable. It was not, however, so highly improbable and extraordinary an occurrence in this series of events as to bear no reasonable connection to the harm threatened by Haygood's original negligence.

*Id.* at 569.

*Hairston*, of course, is of negligible utility in determining the appropriate legal standard to apply to the facts here. Nonetheless, *Hairston's* reasoning is persuasive, at least once it is realized that liability in both cases turns on the application of the same legal standard, to wit, the rule of foreseeability. *Cf. Reyes-Cardona v. J.C. Penney Co.*, 694 F.2d 894, 896 (1st Cir.1982) (noting that differences between the civil law and the common law sometimes are more ap-

not be in disagreement on this issue, in other words, that the conclusion the jury reached here was unreasonable. We are unwilling to do so.

## II.

At trial, the issue of whether Avis was negligent revolved around the condition of the left rear tire when Marshall drove away from the Avis facility on the day of the accident. Complicating this inquiry was the fact that prior to the initiation of the suit, Avis had removed the tire from the car and disposed of it. The only physical evidence of the tire brought forth at trial were two Polaroid snapshots taken after the accident and while the tire was still on the car. With the tire unavailable, the focus of the case shifted onto the two expert witnesses Avis and the Marshalls called, each of whom offered different explanations of why the tire deflated.

██ When plaintiffs moved to have their witness, Gerald Rosenbluth, qualified as an expert, Avis objected, asserting that he lacked expertise in tire failure analysis. The district court overruled the objection. The court also overruled most of Avis's objections to specific aspects of Rosenbluth's testimony. On appeal, Avis once again raises a number of challenges to Rosenbluth's qualifications and testimony, none of which we find to have merit. A discussion of the most serious of these claims follows.

### A. *Qualification of Rosenbluth as an Expert*

Fed.R.Evid. 702 provides that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Mercado v. Wollard Aircraft Equipment, Inc.*, 574 F.2d 654, 655 (1st Cir.1978), we stated that "whether a purported expert is sufficiently qualified to testify in a matter is within the district court's discretion, and its decision will be reversed only upon a showing of clear error." *Accord Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir.1980).

The district court did not commit clear error in finding that Rosenbluth had sufficient "knowledge, skill, experience, training, or education" to testify as an expert on the cause of the tire's deflation. As was brought out at the trial, Rosenbluth's qualifications *include* substantial education in automobile technology and physical sciences; prior ownership of Automobile Technical Services, Inc., a company that was responsible for the maintenance of approximately 250 vehicles; teaching experience at various educational levels of automobile maintenance and servicing; and his employment at the time of the trial as an automotive expert for the State of Arizona. Whether or not Rosenbluth took courses focusing exclusively on tires, his extensive automotive background—and his inevitable exposure to problems of tire maintenance and failure—provided an adequate basis for the district court to exercise its discretion in favor of letting him testify. *See Payton v. Abbott Labs*, 780 F.2d 147, 155 (1st Cir.1985) (that witness was "not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it").[9]

### B. *Partiality of the Expert*

██ Avis contends that, even if Rosenbluth were otherwise qualified, his testimo-

---

parent than real). Moreover, *Hairston* is support for the proposition that the jury's result in the present case, controversial though it may be, lies within the bounds of reason.

**9.** Avis also contends that because the only evidence of the condition of the tires was the two Polaroid pictures, Rosenbluth had to be a photographic expert in addition to a tire expert. No-

where in its appellate brief, however, did Avis demonstrate that it objected below on these grounds, and our search of the record found no such objection (although it did show that Avis vigorously cross-examined Rosenbluth on the quality of the photographs and his ability to draw conclusions from them). We therefore need not address the claim. *See United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 760 (1st Cir.1985).

ny should have been excluded because he was a "partisan witness." As evidence of Rosenbluth's partiality Avis cites, among other things, that Rosenbluth and plaintiffs' attorney repeatedly talked on the phone about the case; that as late as three months prior to trial Rosenbluth and the attorney were discussing various theories as to what caused the tire to deflate; and that Rosenbluth suggested evidentiary methods by which to demonstrate to the jury plaintiffs' theory of the condition of the tire and the method of its deflation.

Even assuming, without deciding, that partiality might disqualify an expert witness, we are at a loss to see how the preceding "evidence" demonstrates that Rosenbluth was improperly biased. Avis has not presented evidence that Rosenbluth agreed to lie on the stand. Rather, the examples it has listed are part of the normal communication that must take place between a lawyer and the expert he has hired to explain the technical aspects of the case. *See generally* Fed.R.Evid. 703 (expert may base his opinion on facts explained to him before the hearing).

### C. *Remaining Objections*

Avis raises challenges to a host of specific opinions and statements made by Rosenbluth, claiming that they were contrary to proven facts, based on guesswork, or were otherwise misleading. We do not find that any of these statements or opinions were so utterly unsupported by the evidence to warrant reversing the district court's decision to allow them into evidence. Avis's arguments, which went to the logic, coherence, and weight of the expert's testimony rather than its admissibility, were properly left to the jury to consider. *See Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985); *Robinson v. Watts Detective Agency*, 685 F.2d 729, 739 (1st Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983); *Mannino v. International Manufacturing Co.*, 650 F.2d 846, 853 (6th Cir.1981).

### III.

■ Following the conclusion of the trial, plaintiffs moved for the imposition of attorneys' fees against Avis and Perez Arzuaga pursuant to Puerto Rico R.Civ.P. 44.1(d).[10] The district court denied the motion, finding that (1) Avis's conduct did not justify an award of fees and (2) although Perez Arzuaga was "obstinate" as defined by the rule, plaintiffs had failed to "specify[] and detail[] ... the type of work performed, the hours spent on various tasks and whether the fee requested was consistent with the prevailing rate in the community."

Plaintiffs have appealed only from that part of the district court's decision denying the award of fees against Perez Arzuaga. They contend that once the court found that Perez Arzuaga had been obstinate, it erred by completely denying the award of fees. We disagree.

Under the express terms of Rule 44.1(d), the trial court has broad discretion in deciding whether to award fees:

> Where a party has been obstinate, the court shall *in its judgment* impose on such person the payment of a sum for attorney's fees.

(Emphasis added.) *See also Serrano v. Lugo*, 83 P.R.R. 290, 293 (1961) ("the award of attorney's fees is discretionary with the trial court"). We cannot say that, on the facts of this case, the district court abused its discretion by refusing to impose any fees on Perez Arzuaga. The case involved two defendants, and even a cursory examination of the record demonstrates that plaintiffs focused heavily on proving Avis's liability. Without a verified account of the tasks on which plaintiffs' attorney spent his time, the district court could not assess how much of plaintiffs' efforts were devoted to the case against Avis, and how much to the case against Perez Arzuaga. The court was likewise unable to determine the effect Perez Arzuaga's obstinacy had on plaintiffs' presentation of their case. Any

---

**10.** In *Pan American World Airways v. Ramos,* 357 F.2d 341 (1st Cir.1966), we held that when a federal court is sitting in diversity and applying Puerto Rico law, the Commonwealth's Rules of Civil Procedure determine whether an award of attorneys' fees is appropriate.

award of fees against Perez Arzuaga would have thus been entirely speculative. Declining to engage in such speculation was well within the district court's discretion.[11]

*Affirmed.*

TORRUELLA, Circuit Judge (dissenting).

The outcome of this decision is that Avis becomes the *insurer* of all that happened as a result of its initial negligence in providing a bad tire, irrespective of the *probability* of the intervening cause taking place. This is not the law in any civil law jurisdiction which I am familiar with, and certainly not Puerto Rico. Avis was not legally required to foresee the improbable, remote, and extraordinary intervention of a third party tortfeasor whose traffic violations were the *only* cause of Marshall's injuries, *i.e.*, Marshall was not injured by a tire explosion, he was injured by Pérez Arzuaga's car hitting him.

Furthermore, in my view, the public policy choices as to the boundaries of liability for negligence in Puerto Rico—traditionally reserved to the *judge* in this civil law jurisdiction—were erroneously delegated here to the jury, thus encouraging forum shopping and possibly leading to inconsistent outcomes among state and federal cases.

I.

There is reason to believe the jury applied John Stuart Mill's now discredited view of causation, which treats causation as the *total* of all the conditions of a result. *See* 2 Enneccerus, *Tratado de Derecho Civil* No. 1 at 66 (1947). "Causation, in the logical sense, is the totality of those elements indispensable for a phenomenon to take place" (translation ours). 2 Diez Picaso, Gullón, *Sistema de Derecho Civil* 634 (3d ed. 1982). This theory, characterized as "equivalencia de condiciones" or "conditio

sine qua non," prescribes liability when the harm would not have occurred had defendant acted prudently. *See Sociedad de Gananciales v. González Padín Co., Inc.,* —— D.P.R. ——, 86 J.T.S. 23 at 4259 (1986). While "equivalencia de condiciones" remains viable today, it cannot *alone* justify causation under the Puerto Rico Civil Code. *See* M. Brau, *Daños y Perjuicios Extracontractuales en Puerto Rico* § 11.03[6] at 712 (2d ed. 1986).

A commentator to the Spanish Civil Code has criticized "equivalencia de condiciones":

> If all the acts are considered the cause, the *field of responsibility is widened extraordinarily,* requiring either the distribution of responsibility among all the possible agents of said cause or the *arbitrary selection* of one of them. For example: suppose an automobile crashes into a wall and the driver is injured because of an oil stain in the pavement, the brakes of the car had been improperly repaired by a mechanic, and a pedestrian had imprudently crossed the street at the time. Thus, responsibility must be distributed among the owner of the shop, the author of the oil stain, and the pedestrian or instead select arbitrarily any one of them as responsible. Either result follows from "equivalencia de condiciones" which always requires a *hypothetical judgment among the factors which cannot be discarded from the mind without concluding that they produced the harm.*

(Translation and emphasis ours). *Sistema de Derecho Civil, supra* at 634–35.

Precisely because "equivalencia de condiciones" sets no limit to the endless chain of causation, the Supreme Court of Puerto Rico has adopted the norm of "causalidad adecuada." *See Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700, 704–05 (1982); *Sociedad de Gananciales v. Jerónimo Corp.,* 103 D.P.R. 127, 134 (1974). The legal and

---

11. We further observe that "obstinancy" is a concept peculiar to Puerto Rico which the experienced district judge, a member of the bar of Puerto Rico and a former member of the Puerto Rico judiciary, was well equipped to assess and apply in the circumstances of this case. *See,*

*e.g., Rose v. Nashua Board of Education,* 679 F.2d 279, 281 (1st Cir.1982) ("we are reluctant to interfere with a reasonable construction of state law made by a district judge, sitting in the state, who is familiar with that state's law and practices").

adequate cause is one which, objectively speaking, ordinarily produces the harm according to general experience. Santos Briz, *Derecho de Daños* 215 (1963).

I agree that the key to "causalidad adecuada" is foreseeability. *Rivera Torres v. Cruz Corchado*, —— D.P.R. ——, 87 J.T.S. 51 (May 20, 1987). To clarify this point, however, an event is foreseeable in terms of its *probability* of occurring and not its possibility. *See Pacheco v. A.F.F.*, 112 D.P.R. 296, 300–01 (1982). Although it is possible that someone could cause plaintiff harm by reason of third party negligence, this was *not probable* at the time of Avis' rental. A cause is inadequate if it has come about only because of other "extraordinary circumstances," such as Pérez Arzuaga's conduct in this case. *See Tratado de Derecho Civil, supra* at 68–69.

As applied here, the intervening negligence of Pérez Arzuaga—if unforeseeable to Avis—constitutes the sole legal cause of the harm. *See* 2 Puig Brutau, *Fundamentos de Derecho Civil* No. 3 at 101 (1983). An intervening cause is one which occurs independently from and subsequent to the negligent act of the first party (Avis), and which effectively breaks the chain of causation between that party's negligence and the harm. *Daños y Perjuicios Extracontractuales en Puerto Rico* § 11.05[1] at 724–29 (1984).

## II

The denial of the directed verdict motion constitutes reversible error for two reasons. First, causation—whether it be a question of fact, law or both—is for the *judge* to resolve in a civil law jurisdiction. *See Estremera v. Inmobiliaria, Rac, Inc.*, 109 D.P.R. 852 (1980) (quoting 3 Castán Tobeñas, *Derecho Civil Español Común y Foral* 237 (1978)).[12] The judge's point of

view is the "most adequate" for setting the bounds of liability, *see* 31 Scaevola, *Código Civil* 361 (2d ed. 1974), regardless of Puerto Rico's want of expertise with juries in civil cases. *Cf. Pan American World Airways v. Ramos*, 357 F.2d 341, 342 (1st Cir.1966).

Yet the majority cursorily dismisses this civil law tradition in favor of a purported federal practice or right to have "disputed questions of fact" regarding foreseeability submitted to the jury.[13] The point is that if *this* tort case had been litigated before a judge in the local courts the outcome could well have been different. However, the majority adduces no reason why the "federal interest" in having causation sent to the jury is any more important than the value of preserving uniformity of decision or why the Seventh Amendment's right to trial by jury compels such a result. *See Byrd v. Blue Ridge Cooperative*, 356 U.S. 525, 537 n. 10, 78 S.Ct. 893, 901 n. 10, 2 L.Ed.2d 953 (1958) ("We intimate no view upon the constitutional question whether the right to trial by jury protected in federal courts by the Seventh Amendment embraces the factual issue of statutory immunity when asserted, as here, as an affirmative defense in a common law negligence action"); *see also* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4508 at 126 (1982). The majority's holding invites forum shopping and I, like the Court in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74–75, 58 S.Ct. 817, 820, 82 L.Ed. 1188 (1938), cannot subscribe to it.

## III

Second, even by the majority's standards no reasonable juror could have found adequate causation. *Karelitz v. Damson Oil Corp.*, 820 F.2d 529, 530 (1st Cir.1987). The cause of Marshall's injuries was *not*

---

**12.** In the Sentence of 5 June 1944, the Supreme Court of Spain held that causation was a *quaestio juris*. *See Derecho Civil Español Común y Foral, supra* at 236 n. 1. But Manresa, in 12 *Comentarios al Código Civil Español* 855 (1973), quotes from a Sentence of 30 January 1951 to the effect that causation is one of "pure fact." *See also Código Civil, supra* at 361. While this debate may be of import to the standard of

judicial review, it does not alter the fact that the trial judge decides the issue.

**13.** The "federal practice" is not without its critics. *See Prosser and Keeton on Torts* § 45 at 319 (5th ed. 1984) (quoting Green, *Rationale of Proximate Cause* 122–27 (1927) ("... the limitations to be imposed upon liability are always a matter for the court")).

the defective tire. The intervening and adequate cause of the injuries was the negligent driving of a third party, Pérez Arzuaga. Avis should not be held responsible for a negligent act of a third party over which it has no control. *See* 3 Santos Briz, *Derecho Civil* 577 (1973) ("responsibility should extend up to the point in which the path of causation can be directed and dominated by a person's will") (translation ours). Further, Avis could no more have foreseen that Pérez Arzuaga would drive recklessly and hit Marshall than it could have foreseen that Pérez Arzuaga was going to drive by, or that Marshall's tires were going to go soft where they did. Would Avis be responsible if instead of being hit by Pérez Arzuaga, Marshall had been held up by Pérez Arzuaga? I think not because the risk of robbery, as the risk of reckless driving, is not an ordinary, usual, and foreseeable risk of a car rental company's negligence. *See Rivera Torres, supra; Negrón v. Noriega,* — D.P.R. —, 86 J.T.S. 75 (1986); *see also Estremera,* 109 D.P.R. at 856–57; *Jacob v. Eagle Star Insurance Co.,* 640 F.Supp. 117, 119 (D.P.R.1986) (applying Puerto Rico substantive law).

The only way for a jury to hold Avis responsible for Pérez Arzuaga's intervening conduct is by applying "equivalencia de condiciones" and hence concluding that anything that can happen after a tire blowout is "foreseeable" by Avis. Yet under the current doctrine of "causalidad adecuada" it is not *probable* that because you have a flat tire you will be run over by a reckless driver. It is *possible* but not *probable*. When we get into the realm of possibilities rather than probabilities we are in the area of speculation. This then leads to the "deep pocket" theory of recovery and converts Avis into an insurer. *See Daños y Perjuicios Extracontractuales en Puerto Rico* § 11.03[6](c) at 713.

I respectfully dissent.