Helen B. SMITH, et al., Plaintiffs,

v.

WILLIAMS HOSPITALITY MANAGE-MENT CORPORATION, Condado Plaza Hotel & Casino, et al., Defendants–Third Party Plaintiffs,

v.

Mac GOMEZ and Perla Gomez, et al., Third Party Defendants.

Civil No. 94–1407(SEC).

United States District Court, D. Puerto Rico.

Jan. 9, 1997.

Frank Pola, Jr., Hato Rey, PR, for Helen B. Smith, Joan Phillips.

Ivan M. Fernandez, San Juan, PR, for Williams Hospitality Management Corp., Condado Plaza Hotel and Casino, Continental Insurance Company.

Rene Pinto–Lugo, Dario Rivera–Carrasquillo, Pinto–Lugo & Rivera, San Juan, PR, for Lexington Insurance Company.

Francisco M. Troncoso–Cortes, Troncoso & Becker, San Juan, PR, for Mac Gomez, Perla Gomez, Conjugal Partnership Gomez–Gomez.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court are the motions for summary judgment filed by defendants Williams Hospitality Management Corp. d/b/a Condado Plaza Hotel and Casino, Posadas de Puerto Rico Associates and Continental Insurance Company of Puerto Rico (**Docket # 86**) and Lexington Insurance Company. (**Docket # 80**) Plaintiffs have filed their respective oppositions. (**Docket # 84**) Upon careful scrutiny of the parties' arguments and the applicable law, defendants' motion is **GRANTED.**

### Factual Background

The decedent Holly Phillips ("Holly") and Rosalba Gomez were schoolmates at San Marino High School in San Gabriel, California, as well as close friends. In 1993, the parents of Rosalba Gomez, Mac and Perla Gomez, invited Holly, then fifteen years old, to accompany them on a Caribbean Cruise. Holly obtained her mother and grandmother's consent and agreed to go. On April 2, 1993 the Gomez family and Holly arrived to San Juan, Puerto Rico and checked into the Condado Plaza Hotel. Mac and Perla Gomez and their son stayed in room number 209 and Holly, Rosalba Gomez and her sister stayed in room number 207.

On the afternoon of April 3, 1993, Mac and Perla Gomez returned to the hotel, accompanied by their son Armando Javier Gomez, and met with Holly and their daughters Rosalba and Nancy Gomez in the pool area. Mac and Perla Gomez conferred briefly with the children and agreed that they would get changed and meet again to have dinner. (Deposition of Nancy Gomez, p. 34, lines 13–25)

Holly, Rosalba and Nancy stayed pool side, while Mac and Perla Gomez and their son Armando Javier returned to the hotel room. On the evening of April 3, 1993, Holly left the pool side area, apparently annoyed by a male teenager who sought to engage her in conversation. (Docket # 80, Exhibit 3, p. 35–37; docket # 78, Nancy Gomez Deposition, p. 38, lines 2–25, p. 39, lines 3–25). Shortly thereafter, Holly collided with a glass panel located on the balcony of the second floor which

faced the swimming pool area in the Ocean Wing of the Condado Plaza Hotel. (Plaintiffs' Second Amended Complaint) Said glass panel was non-safety glass. As a result of this accident, Holly suffered cuts and lacerations to her legs and hands, which required emergency medical treatment and stitches by a plastic surgeon.

After the Gomez family and Holly Phillips concluded their vacation in Puerto Rico, Holly Phillips returned to Camas, Washington, and continued her treatment at Kaiser Medical Foundation. After receiving treatment she returned to her grandmother's house to finish her school semester in California. Despite the alleged disability of Holly's right hand, she obtained a valid driver's license from the State of Washington on or about November of 1993, over six months after she suffered her accident in Puerto Rico. (Docket #90, Exhibit 9, Declaration of Michael Bryan Alwert under Penalty of Perjury, 28 U.S.C. 1746, ¶ 6; Barnes Deposition, p. 78, lines 9–10.) According to Mr. Alwert, Holly "had been driving for some time before that with her provisional license, accompanied by her mother. She was given a car as a present, and she like[d] it a lot and drove everywhere." Alwert's Declaration, ¶ 6.

On the evening of February 12, 1994, at approximately 8:00 p.m., Holly Phillips, was driving an automatic Chrysler LeBaron to a light show in Camas, Washington. Shortly after leaving a friend's house, Holly was involved in an automobile accident when she failed to manage a left-hand curve in a narrow country road. (Alwert's Declaration, ¶¶ 10, 11; Michael Bryan Alwert's Deposition, p. 18–19, Exhibit 11, Docket #80) A witness, Michael Bryan Alwert also indicated that the accident happened in a dark, unlighted road. (Alwert Deposition, p. 34, lines 1–5). He also noted that Holly's car radio was playing loudly, and he had to turn the volume off, in order to communicate with his other friends at the scene of the accident. (Alwert Deposition, p. 28, lines 13–25, p. 29, lines 1–4; p. 31, lines 12–25, p. 32, lines 1–7.

According to the police sergeant who conducted the investigation of the accident, Holly Phillips was not wearing a seat belt at the time of the accident. (Docket #84, Tina Goodnight's Deposition, Exhibit 5, p. 14, lines 1–14; Docket #80, Sergeant Barnes' Deposition, p. 52, lines 19–25; p. 53, lines 1–8) As a result of the accident, Holly's body was pinned inside the car, which led to her eventual death by asphyxia. (Docket #84, Deposition of Garry Alex, p. 16, lines 18–25). Holly's friend and passenger, Kimberly Kester, who was wearing a seat belt, survived the accident with minor injuries. (Docket #80, Deposition of Sergeant Anthony Barnes, p. 52, lines 12–25, p. 53, lines 1–8) The police officer also determined that the speed of the vehicle was the main cause of the accident. Id. p. 45, lines 1–25.

Plaintiffs filed the present complaint alleging that defendants failed to: maintain in a public area of the Hotel a glass wall with incomplete mounting; maintain in a public area of the Hotel a glass wall with lack of signs, or warning, or horizontal divisions; maintain in a public area of the Hotel shatter-proof glass panels, and failed to warn of the unreasonably unsafe premises in the Hotel. (Plaintiffs' Second Amended Complaint, ¶ 23). Plaintiff argue that such negligent maintenance led to Holly's injuries to her right hand, and which ten months later, led to her loss of control of her car in Washington and her eventual death.

Defendants filed a third-party complaint against third-party defendants, claiming that Mac and Perla Gomez failed to properly supervise Holly Phillips, a minor under their care and custody and that such negligent supervision was a contributing cause to plaintiffs' injuries. This Court, in a previous order, dismissed third party plaintiffs' complaint against third party defendants, when it found that Mac and Perla Gomez did not breach their duty of care, if any, towards Holly Phillips. We proceed to examine the allegations against the original defendants in the present case.

**Applicable Law/Analysis**

As noted by the First Circuit, "[s]ummary judgment has a special niche in civil litigation." It serves "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine,* 976 F.2d 791, 794 (1st

Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). This device "allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 314–315 (1st Cir. 1995).

According to Fed.R.Civ.P. 56(c), a summary judgment motion should be granted when the pleadings, depositions, answers to interrogatories, issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir. 1994). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

For a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir. 1992). *See also, Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir.1994).

Moreover, this Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (citing *Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

Although its authority is not binding, we cite a recent decision by the Supreme Court of New Jersey which elucidates the purpose of the summary judgment procedure, as established by the seminal trilogy of cases decided by the United States Supreme Court in *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Supreme Court of New Jersey, in *Brill v. Guardian Life Insurance Co. of America,* 142 N.J. 520, 666 A.2d 146 (1995), explained:

> After early debate about the breadth of the summary judgment power, the jurisprudence of summary judgment was rather uniform until 1986 ... In that year the United States Supreme Court upheld summary judgments in three cases, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Anderson v. Liberty Lobby,* and *Celotex Corp. v. Catrett* (citations omitted). *Matsushita* was decided in March whereas *Liberty Lobby* and *Celotex* were decided the same day in June. The fact that the Court addressed the summary judgment standard three times within four months suggests how significant the issue had become.
>
> .... Read together, *Matsushita, Liberty Lobby* and *Celotex* adopted a standard that requires the motion judge to engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Liberty Lobby,* supra 477 U.S. at 251–52, [106 S.Ct. at 2511–12]. That weighing process requires the court to be guided by the same evidentiary standard of proof—by a preponderance of evidence or clear and convincing evidence—that would apply at the trial on the merits when deciding whether there exists a "genuine" issue of material fact. *Id.* at 254–56 [106 S.Ct. at 2513–14]. *Brill* at 530, 533–34, 666 A.2d 146.

The Court went on to explain the practical consequences of the *Celotex* trilogy, as it was applied throughout different jurisdictions across the country:

> The Arizona Supreme Court has aptly described why so many jurisdictions have adopted the standard articulated in *Celotex* and *Liberty Lobby*. It stated: 'We live in what is widely perceived as a time of great increase in litigation and one in which many meritless cases are filed, vastly increasing the dockets before our trial judges. As a result, the courts of this country have been urged to liberalize the standards so as to permit summary judgment in a larger number of cases.' See, e.g., Report of the Commission on the Courts, The *Future of Arizona Courts*, at 62 (1989) [*Orme School v. Reeves*, 166 Ariz. 301, 802 P.2d 1000, 1003–04 (Ariz.1990).] *Id.* at 539, 666 A.2d 146.

The New Jersey Supreme Court continued:

> It is critical that a trial court ruling on a summary judgment motion not "shut a deserving litigant from his [or her] trial." ... At the same time, we stress that it is just as important that the court not "allow harassment of an equally deserving suitor for immediate relief by a long and worthless trial." ... If these general rules are applied by the courts with discernment and care, the summary judgment procedure, without unjustly depriving a party of a trial, can effectively eliminate from crowded court calendars cases in which a trial would serve no useful purpose and cases in which the threat of trial is used to coerce a settlement. To send a case to trial, knowing that a rational jury can reach but one conclusion, is indeed "worthless" and will "serve no useful purpose." *Id.* at 540–41, 666 A.2d 146.

The Court added the following postscript to its analysis of the summary judgment standard, which we heartily endorse:

> The thrust of today's decision is to encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves. Some have suggested that trial courts out of fear of reversal, or out of an overly restrictive reading of [the case law] or a combination thereof, allow cases to survive summary judgment so long as there is any disputed issue of fact. As to fear of reversal, we believe our judges are made of sterner stuff and have sought conscientiously over the years to follow the law. *Id.* at 541, 666 A.2d 146.

Pursuant to the abovementioned case law, we proceed with our analysis.

The parties, in the documents submitted before the Court, engage in a lengthy and convoluted dispute regarding the extent of the damage wrought by the Condado Plaza accident upon Holly Phillips' right hand fingers and the alleged causal link with Holly's death. We proceed to briefly outline the contending arguments. Defendants note that Dr. Paul Tomljanovich examined and treated Holly at the Ashford Presbyterian Community Hospital. In his subsequent medical report of her injury, he wrote:

> Holly was a young female who presented with [sic] multiple cuts of the right lower leg in its lateral aspect. There was a 5 × 5 cm. loss of skin below the knee. Around the knee, 2 cuts each of 3 cm. were present. Below the knee, a piece of skin was elevated by the size of 5 × 5 × 5 cm., as a page of a book and around the lower leg a 7 cm. irregular laceration was present.
>
> In addition, the 5th finger of the right hand had a 2 cm laceration with the transection of the digital nerve. (Docket # 80, Exhibit 6)

With regards to the injury to Holly's right hand finger, which plaintiffs seem to attach special importance as a cause of her car accident, defendants also proffer the medical report of one Dr. Manuel Medina, who states:

> The examination of the records and the report showed that the only serious injury sustained by Ms. Phillips in her right hand was the transection of an ulnar digital nerve which causes the loss of sensation in the ulnar half of her small fingertip. This injury was never attempted to be repaired even ten months after it happened.
>
> The affected nerve is pure sensory nerve to which a transection will only cause a

sensory deficit of half of the tip of the finger. This injury should not cause any disability to use her right hand neither to drive or use any machinery or sensitive instrument. Also, this kind of injury sometimes recovers by itself after a short time by reinnervation of the area. (Docket # 80, Exhibit 7, p. 2)

Plaintiffs counter these statements with their own battery of medical experts. Plaintiffs cite to the medical report of Dr. Brar, a plastic surgeon, who noted:

I examined Holly Phillips again and in addition to the previous report, two fairly fine transverse scars, each measuring 0.75 cm. in length were noted, one over the middle of the right index finger and the other one over the middle of the right little finger, mostly over the ulnar half of the volar surface. The corresponding distal portion of these fingers was numb, indicating injury to digital nerves. Not very much can be done about the scars since they are fairly fine, however, the nerves can be repaired and I referred her to Dr. Cynthia Gray for consultation since I do not do this kind of work and she does. (Docket # 80, Exhibit 10)

Plaintiffs note in their opposition to summary judgment that "[t]he only inference that can be drawn from Dr. Brar's referral is that Holly's nerves needed repair, and was significantly affected by the injuries suffered at the Hotel." (Docket # 84, p. 10) Plaintiffs also rely on a videotaped deposition of Holly Phillips on July 15, 1993, of questionable admissibility, where Holly Phillips talks about her constant pain in her right hand and her limited range of motion in her left hand.

Moreover, plaintiffs rely on the testimony of two engineers, Carlos Reoyo and Rafael Faria, who reconstructed the Washington accident in which Holly lost her life. Based on their studies, they concluded that "speed was not a determining factor in the cause of the accident and that the accident at the hotel contributed to the accident in which she lost her life."[1] (Docket # 84, Exhibit 12, p. 8,

Exhibit 13, p. 7) Plaintiffs also proffer the testimony of Dr. Tomas Torres Delgado, a hand surgeon who, based on his review of the medical evidence, concluded: "It is my opinion that the injuries suffered by Ms. Holly Phillips at the Condado Plaza Hotel in April 3, 1993 led to the accident in which she lost her life later." (Docket # 84, Plaintiffs' Statement of Uncontested Facts, Exhibit 9, p. 4)

Lastly, plaintiffs also impeach the testimony of Sergeant Anthony Barnes, who concluded that the main causes of Holly's death were the speed of the car and her lack of a seat belt. (Docket # 80, Deposition of Sergeant Anthony Barnes, p. 52, lines 12–25, p. 53, lines 1–8; p. 45, lines 1–25) They refer to the testimony of Garry Alex and Tina Goodnight which, according to plaintiffs, shed doubt on the issue of whether Holly was wearing a seat belt at the time of the accident. According to plaintiffs, paramedic Garry Alex stated that the passenger, Kimberly Kester, told him that she and Holly were both wearing their seatbelts. (Deposition of Garry Alex, p. 23, lines 17–24) This statement is hearsay, and as such, it may not be used to properly oppose a summary judgment. Fed.R.Civ.P. 56(c), (e). As for Tina Goodnight's statements, they do not clearly state that Ms. Phillips was wearing a seatbelt. Indeed, it is more reasonable to infer that Ms. Phillips was not wearing a seat belt at the time of the accident.

Q. No seat belt by the driver?

A. By the driver, that's correct. I can't attest to whether it may have come off during the roll-over of the car or the impact of hitting the road or whatever. I just know that she didn't have a seat belt on when I got there. (Tina Goodnight's Deposition, p. 14, lines 7–14)

With this context in mind, this Court must determine if defendants may be held liable for Holly's Phillips death, due to their purported negligent maintenance of the Hotel. In order to decide this issue, we must examine Puerto Rico tort law.

---

**1.** Plaintiffs acknowledge that the Clarks County Coroners' Report indicated that: 1) alcohol did not appear to be a factor in the accident, and 2)

the cause of the accident may have been "a high rate of speed and an inexperienced driver." (Docket # 84. Exhibit 12, p. 7, ¶ 14)

Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141, states:

A person who by an act or omission causes damage to another person through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

■ Pursuant to this law, plaintiffs must establish a prima facie claim by showing: 1) an act or omission constituting fault or negligence; 2) damages; and 3) a causal connection between the defendant's tortious conduct and the injuries sustained by plaintiff. *Sociedad de Gananciales v. Gonzalez Padin.* 117 D.P.R. 94, 106 (1986).

■ Consequent to this standard, an act or omission constitutes fault or negligence where the defendants had a duty of care to act, and failed to respond as reasonable and prudent men would have in similar circumstances. *Jimenez v. Pelegrina Espinet,* 112 D.P.R. 700, 704 (1982). Defendants are not liable unless plaintiffs prove that if they had acted as reasonable and prudent men, the damages incurred would have been avoided. Id. This element of causation precludes the imposition of absolute or objective responsibility, the premise being that a negligent tort feasor is not an insurer. *Estremera v. Inmobiliaria,* 109 D.P.R. 852, 856 (1980).

■ According to Puerto Rico law, an individual is at fault when he fails to exercise due diligence so as to prevent an injury which is foreseeable. In other words, the individual is liable only if his negligence is the proximate cause of another's injuries. *Widow of Delgado v. Boston Insurance Co.,* 99 P.R.R. 693, 703 (1971). The law requires both fault and the necessary causal nexus between the wrongful act and the damage sustained. *Jimenez v. Pelegrina,* 112 D.P.R. at 881–882. The causal nexus principle serves to limit a party's liability for hazards flowing from its negligence to those hazards that could be "anticipated by a prudent person." *Pacheco v. Puerto Rico Water Resources Authority,* 112 P.R.R. Sct. Official Translations, 369, 372 (1982).

■ Puerto Rico law places particular emphasis on the element of foreseeability as an essential prerequisite for liability under Article 1802. *Elba v. U.P.R.,* 125 D.P.R. 294, 310 (1990). Foreseeable events are those that "may be calculated by a prudent conduct alert to eventualities that may be expected in the course of life." *Jimenez v. Pelegrina,* 112 D.P.R. at 888. Foreseeability does not require that the precise risk or exact harm which occurred should have been foreseen and/or anticipated. The essential factor is that the individual should have foreseen consequences of the kind that in fact occurred. *Gines v. Puerto Rico Aqueduct & Sewer Authority,* 86 P.R.R. 490, 496 (1962).

Such inquiries into foreseeability will rarely reveal a precise answer and the Puerto Rico Supreme Court has acknowledged the difficulties of such endeavors: "'[T]he difficult question' of how far the causal nexus reaches will never be resolved in a fully satisfactory manner through abstract rules, but in doubtful cases the judge must solve them according to his free conviction, considering all the circumstances." *Estremera v. Inmobiliaria, Inc.,* 109 D.P.R. 852, 859 (citing Castán Tobeñas, *Derecho Civil Español, Común y Foral,* p. 195)

■ Intervening causes can break the chain of causality if they are not foreseeable. *Elba v. U.P.R.,* 125 D.P.R. at 310. An intervening cause is defined as "a cause of injury that comes into active operation in producing the result after the actor's negligent act or omission has occurred." *Marshall v. Perez Arzuaga,* 828 F.2d 845, 848 (1st Cir.1987) To impose liability, courts must engage in a two-pronged test. First, they must determine whether the negligence in fact caused the injury and second, whether the injury was reasonably foreseeable. The Court must keep in mind that "the ultimate determinant of liability is always foreseeability itself." *Id.* at 849.

Upon careful review of the gargantuan record before us, this Court cannot conclude that Holly's accident and subsequent injury to her right hand finger was the direct cause of her accident, ten months later in the State of Washington or that her death was a fore-

seeable consequence of the injuries sustained in Puerto Rico.

### Causality

■ Notwithstanding all of plaintiffs' documentation regarding the alleged causal link between the Hotel accident and Holly's eventual death, (i.e. the engineer's testimony regarding the lack of an intervening cause and Dr. Flores' opinion regarding the direct link between Holly's hand injuries and her death due to her inability to operate her car) such conclusory evidence does not sway the Court from granting summary judgment.

The First Circuit has recently and repeatedly held that "neither conclusory allegations, improbable inferences, and unsupported speculation, **nor brash conjecture coupled with earnest hope that something concrete will materialize** is sufficient to block summary judgment." *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245 (1st Cir.1996) (emphasis added); *see also Roche v. John Hancock Mutual Life Insurance Co.,* 81 F.3d 249, 253 (1st Cir.1996) ("genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever perorations catch a litigant's fancy ... [m]otions for summary judgment must be decided on the record as it stands, not on a litigant's vision of what the facts might some day reveal ... speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion.")

There are a plethora of factors which contributed to Holly's car accident and thus sever the causal link between the accident at Condado Plaza and her death in the state of Washington. As we noted previously, despite the alleged disability of Holly's right hand, she obtained a valid driver's license on or about November of 1993, over six months after she suffered her accident in Puerto Rico. (Docket # 90, Alwert's Declaration, ¶ 6) Mr. Alwert acknowledged that Holly "had been driving for some time before that with her provisional license, accompanied by her mother. She was given a car as a pres-

ent, and she like[d] it a lot and drove everywhere." Id.

The mere fact that Ms. Holly Phillips was able to obtain a valid driver's license in the State of Washington severely undermines the allegations of her disability. The determination by the Department of Motor Vehicles from the State of Washington that Holly could drive competently without special devices in her vehicle is compelling evidence against plaintiff's claim that Holly's disabled right hand prompted her accident.

The record also indicates that several other factors played a determinant role in the accident. A witness, Michael Bryan Alwert also indicated that the accident happened in a dark, unlighted road. (Alwert Deposition, p. 34, lines 1–5). Such darkness could have easily distorted Holly's perception of the sharpness of the curve, and indeed, may have prevented **any** driver, disabled or not, from properly handling that curve. Mr. Alwert also noted that Holly's car radio was playing so loudly that he had to turn the volume off, in order to communicate with his other friends at the scene of the accident. (Alwert Deposition, p. 28, lines 13–25, p. 29, lines 1–4; p. 31, lines 12–25, p. 32, lines 1–7.). Although plaintiffs' may discount this factor as a negligible factor, the distraction from loud music certainly could have contributed to Holly's ability to properly focus on the sinuous and darkened road.

Furthermore, according to Sergeant Barnes, the police sergeant who conducted the investigation of the accident, Holly Phillips was not wearing a seat belt at the time of the accident. (Docket # 80, Barnes' Deposition, p. 52, lines 19–25; p. 53, lines 1–8) As a result of the accident, Holly's body was pinned inside the car, which led to her eventual death by asphyxia. On the other hand, Holly's friend and passenger, Kimberly Kester, who was wearing a seat belt, survived the accident with minor injuries. (Docket # 80, Deposition of Sergeant Anthony Barnes, p. 52, lines 12–25, p. 53, lines 1–8) The Court cannot ignore the unfortunate and tragic disparity between the outcome of this accident for these two young ladies. The evidence strongly suggests that Holly's failure to wear a seat belt contributed signifi-

cantly, and perhaps was the only direct cause of her death by asphyxia.

Additionally, police officer Barnes, an experienced police officer, also determined that the speed of the vehicle was the main cause of the accident. Id. p. 45, lines 1–25. Upon a hypothetical question posed to Sergeant Barnes by counsel, as to whether he would have concluded that the cause of the accident was the speed of the vehicle if he knew that Holly's right hand was impaired, Mr. Barnes answered: "I still would have concluded that she was operating the vehicle too fast to negotiate the curve. I would have probably added that under the circumstances if she is impaired she should have had the vehicle equipped with a device to enable her to negotiate the curve correctly." (Barnes' Deposition, p. 80, lines 3–23). Sergeant Barnes' well-reasoned reply bolsters this Court's conviction that Holly Phillips' cause of the accident was not related to her accident at the Condado Plaza Hotel in Puerto Rico.

Finally, the mere passage of time—over ten months since the initial accident at the Condado Plaza—certainly contributed to the attenuation of the alleged causal link between her initial injury and her subsequent death. The Court cannot ignore the fact that Holly's subsequent treatment and use of her hand during those months could have either improved or aggravated Holly's condition in such a manner as to effectively dissolve the link between the initial injury and her condition at the time of the accident in Camas, Washington.

In view of all these intervening causes— Holly's acquisition of a driver's license, the darkness of the road, the extremely loud music blaring from Holly's car, Holly's failure to wear a seat belt, the speed at which Holly drove her vehicle, and the passage of time—the Court concludes that plaintiffs have failed to establish the causal link between the Holly Phillips' hand injury due to the Condado Plaza Hotel's alleged negligence and her eventual death, ten months later and over three thousand miles away in the State of Washington.

### Foreseeability

Even granting all reasonable inferences in plaintiffs' favor, that is: 1) that the Hotel negligently failed to maintain or design the glass panel, which led to Holly's collision with the panel and the injuries to her right hand; 2) that the injuries sustained to her right hand led to Holly's inability to properly operate her automobile, and thus contributed to her accident in Camas, Washington and her eventual death; 3) that the speed of her car was not an intervening cause, and that she would have crashed regardless of whether she was driving at 15 or 30 miles per hour; 4) that she was wearing a seat belt, and that the impact of the collision caused the unfastening of the seat belt, the Court still concludes that a reasonable jury could not find that her death was a foreseeable consequence of defendants' purported negligent maintenance of the hotel premises.

Let us consider the series of events which the Hotel must have foreseen: due to defendants' failure to design a shatter-proof glass, it will cause severe injuries to a teenager who will smash into it due to her distraction in getting away from a persistent teenage suitor. Such injuries will impair the potential ability to drive of a fifteen-year old, who, ten months later, after she has become old enough to drive, will be unable to maneuver a sharp curve on a dark road in the State of Washington, thus leading to an accident. The driver, not having worn a seatbelt, (or having worn a seatbelt, it will unfasten due to the force of the impact of the crash) will be pinned against the side of the car and thus suffer death from asphyxia. Such a series of unforeseeable events, when dissected in this manner, reveal *in crescendo* with each step the unreasonableness of imposing liability upon defendants for Ms. Holly Phillips' death.

Pursuant to the above discussion, we find that Holly Phillips' death was not causally related to the defendants' alleged negligent acts in their failure to maintain a shatter-proof glass at the Condado Plaza Hotel. We also find that Holly's death was not a foreseeable consequence of the injuries sustained at the Condado Plaza Hotel in Puerto Rico. Accordingly, defendants' motions for partial summary judgment are **GRANTED.** (Docket # 86, 80) Partial judgment shall follow accordingly. We do not express an opinion

at this time on the issue of defendants' negligence and liability regarding the injuries sustained by Holly Phillips at the Condado Plaza Hotel. The Court will schedule a status conference at a later date to discuss that issue.

**SO ORDERED.**