**Garrett Brock TRAPNELL, Appellee,**

v.

**George RALSTON; J.A. O'Brien; Joseph Petrowkey; and A.W. Bayles, Appellants.**

**No. 86–1575.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1987.

Decided May 18, 1987.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., for appellants.

Gary M. Cupples, Kansas City, Mo., for appellee.

Before ROSS, Circuit Judge, and FLOYD R. GIBSON, Senior Circuit Judge, and CAHILL,* District Judge.

ROSS, Circuit Judge.

Appellee, Garrett Trapnell, an inmate at the United States penitentiary at Leavenworth, Kansas (Leavenworth) was transferred on December 16, 1982 to the United States Medical Center for Federal Prisoners at Springfield, Missouri (Springfield). While there he refused to allow anyone to examine, evaluate, medicate or treat him, and within forty-eight hours he was returned to Leavenworth on December 18, 1982. During this period appellee had two habeas corpus lawsuits on file, one on ap-

---

* The HONORABLE CLYDE S. CAHILL, United States District Judge for the Eastern District of Missouri, sitting by designation.

peal before the Tenth Circuit and one pending before the United States District Court for the District of Kansas. The transfer did not affect these suits in any way. Nevertheless, appellee contends in this civil rights action that he is entitled to damages because the transfer deprived him of his rights to procedural due process and access to the courts.

Appellants are the warden at Leavenworth, the warden and associate warden at Springfield and a Regional Director for the Bureau of Prisons. As defendants in appellee's civil rights suit they moved for summary judgment on the basis of qualified immunity as to the damages claims against them in their individual capacity. We reverse the district court's denial of appellants' motion.

Government officials performing discretionary functions generally are entitled to qualified immunity from civil damages suits challenging the performance of those functions. "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). On the other hand, if a defendant's conduct[1] violated clearly established constitutional or statutory rights of which a reasonable person would have known, the defendant is not shielded by qualified immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct.

at 2738. Appellee urges that *Vitek v. Jones,* 445 U.S. 480, 491–94, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) "clearly established" two years before his transfer that a prisoner may not be committed to a mental institution without a due process hearing.

Appellants reason that while at the time of the transfer it was clear that a prisoner committed for treatment is entitled to a pretransfer hearing, the law was not clearly established that a hearing must precede a transfer for medical or psychological evaluation.[2] While this case was under submission, another panel of this court in *United States v. Jones,* 811 F.2d 444 (8th Cir.1987) agreed with appellants' view, distinguishing the indefinite commitment in *Vitek* from a temporary transfer for clinical evaluation:

The *Vitek* opinion, however, addresses a statute providing for the indefinite commitment of a prisoner, not merely a transfer for a psychological evaluation. Thus, the court's reliance on the stigma attached to a commitment and the behavioral modification procedures utilized at the facility, on which the court substantially relied in finding a protected liberty interest, has no application to the present case. * * *

Indeed, a temporary transfer for a psychological evaluation places no more of an imposition on a prisoner than does a transfer for administrative reasons. The Supreme Court has made clear that prison officials may decide to transfer a prisoner from one facility to another for any

---

1. The parties have engaged in extensive discovery and have provided the court with a detailed record in which we find no factual issue regarding the nature of the appellants' conduct. When materials are submitted to supplement the pleadings, we "construe the facts revealed by these materials and all reasonable inferences therefrom in favor of the nonmoving [party] when identifying the acts complained of so as to determine whether acts of these kinds were in violation of constitutional standards clearly established at the time." *Myers v. Morris,* 810 F.2d 1437, 1459 (8th Cir.1987). *See also Bonitz v. Fair,* 804 F.2d 164, 177–82 (1st Cir.1986) (Campbell, Chief Judge, dissenting); *Kompare v. Stein,* 801 F.2d 883, 886, 889 (7th Cir.1986).

2. An attending physician at Leavenworth had recommended in a "brief transfer summary" directed to Springfield medical personnel that appellee receive "a full physical and psychiatric evaluation, with particular attention to" appellee's complaints including "hearing loss, weight loss, shortness of breath * * * incisional hernia * * * [possible] emphysema." Upon his arrival at Springfield, appellee was classified as a "holdover" patient to be held there pending completion of a clinical evaluation and then returned to Leavenworth. A list of diagnostic procedures was recommended. However, after appellee refused all such attention he was promptly returned to Leavenworth.

reason or no reason at all without implicating a liberty interest of the prisoner, even in cases where the prisoner is transferred to a more restrictive environment. *Id.*, at 448.

Appellee's transfer could hardly have been more "temporary" or farther from the indefinite commitment at issue in *Vitek*. Moreover, appellee, having refused any form of treatment or testing, does not contend that any was forced upon him. We reject as frivolous appellee's contention that his forty-eight hour housing in the psychiatric ward at Springfield was itself a form of "treatment." In fact, appellee concedes that he specifically asked to be segregated from the general prison populations at both institutions for his own safety from other inmates. We conclude that no clearly established legal norm was violated by the absence of a pretransfer hearing in appellee's circumstances. Accordingly, appellants are shielded by qualified immunity from the burden of defending appellee's procedural due process claim.

Regarding the claimed denial of access to the courts, appellee does not attempt to identify any injury to or impact on his pending lawsuits attributable to the transfer to and from Springfield. Appellee seeks to create an issue of fact by impugning appellants' motives for the transfer. *But see Myers v. Morris*, 810 F.2d 1437, 1453 (8th Cir.1987) concluding that "more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy is required to defeat qualified immunity for conduct which, absent that state of mind, would be constitutionally acceptable or protected by immunity." *Accord Hobson v. Wilson*, 737 F.2d 1, 29 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985):

> *Harlow* focused on the need to enable courts to dismiss "insubstantial" lawsuits before discovery and trial, and it adjusted the qualified immunity defense to facilitate that goal. The kind of case we confront today, involving allegations of unconstitutional motive, offers to litigants a possible means to circumvent the new rule, simply by pleading that any act was performed with an intent to violate clearly established constitutional rights and thereby surmounting the threshold test set out in *Harlow*. We recognize that in some instances, plaintiffs might allege facts demonstrating that defendants have acted lawfully, append a claim that they did so with an unconstitutional motive, and as a consequence usher defendants into discovery, and perhaps trial, with no hope of success on the merits. The result would be precisely the burden *Harlow* sought to prevent.

Appellee has presented no evidence that appellants were motivated by animus or intent to retaliate against him for the exercise of his first amendment rights. We conclude that appellee's charges concerning appellants' state of mind are no more than an attempt to elevate constitutionally acceptable conduct to which appellee objected into a constitutional violation by conclusory allegations of lack of good faith. The judgment of the district court denying appellants' motion for summary judgment is reversed, and this case is remanded with directions to dismiss the complaint.