**Sandra HOWELL, Individually and as next friend of Tina Michelle Patterson, a minor, Plaintiff,**

v.

**CITY OF CATOOSA, a municipal corporation, James Enos Combs, an individual, and Joe Garber, an individual, Defendants.**

No. 88–C–580–B.

United States District Court, N.D. Oklahoma.

Jan. 3, 1990.

Lillian M. Hamor, Tulsa, Okl., Joe White, Collinsville, Okl., for plaintiff.

John H. Lieber, Eller & Detrich, Tulsa, Okl., for defendants.

## ORDER

BRETT, District Judge.

This matter comes on for consideration upon a Motion for Summary Judgment filed on April 27, 1989, by Defendants City of Catoosa (City), James Enos Combs (Combs) and Joe Garber (Garber). Combs and Garber were Catoosa Police Officers at times material herein.

**1.** 42 U.S.C. § 1983.

**2.** By which Patterson gained entrance to the house.

Plaintiff Sandra Howell (Howell), individually and as next friend of Tina Patterson (Tina) (hereinafter Plaintiffs), alleged in the Complaint that Howell's ex-husband, Jerry D. Patterson (Tina's natural father) traumatized and inflicted emotional harm upon them by his actions of May 2, 1987; that Defendants violated Plaintiffs' civil rights [1] by failure to take proper action on that date and thereafter; that Plaintiffs were damaged thereby in the amount of $10,-000,000.00.

Plaintiffs allege Patterson broke into Howell's house at 1:00 A.M., May 2, 1987, and sexually assaulted, molested and raped Howell; that Howell called the Catoosa police when Patterson fell asleep; that Officer Garber awoke Patterson upon arrival at Howell's residence, took a key [2] from Patterson and inquired whether he sexually assaulted Howell which Patterson denied. Garber required Patterson to leave Howell's house but did not arrest him.

Approximately 1 hour later (about 7 A.M.) Patterson returned to Howell's residence outside the bedroom window of Tina,[3] who summoned her mother. Howell advised Patterson she was unable to work that day because of his assault upon her and Patterson offered her recompense. As Howell opened the screen to permit Patterson to slide through the money, he pulled the screen away and entered the house. Howell and Tina fled to a neighbor's house and called Catoosa police. Patterson had left Howell's house by the time Officer Combs arrived.

Defendants filed a Motion to Dismiss essentially based upon Plaintiffs' failure to plead that their alleged damages resulted from some officially enacted City of Catoosa policy. Thereafter, and prior to any ruling by this Court on Defendants' motion, Plaintiffs filed an Amended Complaint alleging denial of constitutionally granted equal protection under the law by failing to arrest Patterson because of his gender and by failing to enforce, because of their gen-

**3.** Who had been asleep during the earlier encounter between her parents.

der, the law in protection of Plaintiffs. Specifically, Plaintiffs complain of Defendants' failure to arrest Patterson on the first visit and failure to protect Howell by proper law enforcement. Plaintiffs' third claim alleged tortious conduct on the part of Defendants.

Defendants again moved to dismiss. This Court, by bench order, denied Defendants' motion. Plaintiffs, in their Amended Complaint, stated a claim of a governmental policy of indifference to victims of domestic violence in line with *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny, thus withstanding a motion to dismiss. Defendants then moved for summary judgment.

■ Municipalities and other local governmental units cannot be sued on a *respondeat superior* theory for the unconstitutional acts of their employees. *Monell v. City of New York, supra.* However, a municipality may be sued for "constitutional deprivations visited pursuant to governmental 'custom'" as well as deprivations visited pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." *Id.* at 690–91, 98 S.Ct. at 2035–36, reversing *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ As with other civil litigation, the Plaintiff has the burden of proving the elements of a § 1983 action by a preponderance of the evidence. Further, in cases such as the instant case, proving deprivation of *equal protection* under the Fourteenth Amendment requires a showing of intentional discrimination, not simply of disproportionate impact. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984) (relief authorized under § 1983 "only when there is proof or admission of intentional discrimination"). *See also, Minority Policy Officers Ass'n. v. South Bend*, 801 F.2d 964 (7th Cir.1986); *Briggs v. Anderson*, 796 F.2d 1009 (8th Cir.1986).

Defendants have, of course, the burden of pleading affirmative defenses, such as immunity, *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), which was done in this case. (Defendants raised qualified immunity arguments in both Motions to Dismiss as well as their Motion for Summary Judgment).

■ Once a Defendant raises the defense of qualified immunity as a defense to an action the Plaintiff has the burden of coming forward with facts or allegations sufficient to show both that Defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred. *Powell v. Mikulecky*, 891 F.2d 1454 (10th Circuit, 1989). Qualified immunity "is an immunity from suit" rather than a mere defense to liability. Like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Powell v. Mikulecky, supra*, citing *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and *Eastwood v. Dept. of Corrections of the State of Oklahoma*, 846 F.2d 627 (10th Cir.1988).

Summary judgment pursuant to Fed.R. Civ.P. 56 is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265, 274 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Windon Third Oil and Gas v. Federal Deposit Insurance Corporation*, 805 F.2d 342 (10th Cir.1986). In *Celotex*, 477 U.S. at 317, 106 S.Ct. at 2550 (1986), it is stated:

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

To survive a motion for summary judgment, nonmovant "must establish that there is a genuine issue of material facts ..." Nonmovant "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita v. Zenith*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The existence of qualified immunity defenses, most courts agree, should be decided on summary judgment. *Green v. Carlson*, 826 F.2d 647 (7th Cir.1987); *Trapnell v. Ralston*, 819 F.2d 182 (8th Cir.1987). Summary judgment is inappropriate where, viewing all facts in a light most favorable to the Plaintiff, a reasonable jury could conclude that the unlawfulness of the defendant's act was so apparent that no reasonable officer would have believed that his/her action was lawful. *Martin v. Malhoyt*, 830 F.2d 237, 255 (D.C.Cir.1987).

■ The Court concludes Plaintiffs have not sustained their burden, as to alleged constitutional equal protection claims, of showing the acts of Garber and Combs were "apparently unlawful" in failing to arrest Patterson. It is disputed whether the sexual encounter was an assault or an assented to act, which relates directly to the actions of the officers that night and in the immediate period thereafter. It is disputed whether Officers Garber and Combs discouraged Howell from filing charges or advised Howell where and how to file charges against Patterson.

Under the facts now before the Court it concludes neither Garber nor Combs had any obligation to arrest Patterson. *DeShaney v. Winnebago*, — U.S. —, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Viewing Plaintiff's version of the two officers' visits to Plaintiff Howell's residence in the most favorable light to Plaintiff, the arrest or pursuit of Patterson would have been discretionary with the officers.[4] *DeShaney, supra.*

The Court concludes Garber and Combs were acting in good faith and had every reason to believe their actions of May 2, 1987, and thereafter were lawful. *Martin v. Malhoyt, supra;* therefore, the doctrine of qualified immunity grants them protec-

tion. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642 (10th Cir.1988); *Coen v. Runner*, 854 F.2d 374 (10th Cir. 1988); *Jones v. City and County of Denver*, 854 F.2d 1206 (10th Cir.1988). Therefore, the Defendants' Motion for Summary Judgment as to Plaintiffs' claims (Counts One and Two) against Officers Garber and Combs, should be and the same is hereby SUSTAINED.

■ As to the city, Plaintiffs face a burden of showing a "policy or custom" of the City of Catoosa that it is indifferent to victims of domestic abuse[5] and that it discriminated against women and in favor of men in the *de facto* execution of its police department efforts. The primary facts of the events of May 2, 1987, are essentially undisputed. The Catoosa police records, submitted by Plaintiffs, allegedly showing a pattern of indifference to victims of certain types of crime (domestic violence) and/or a neglect or disregard of certain victims (women) based on their gender, fail to show such pattern. The only issue is whether such evidence is sufficient to survive summary judgment. *Celotex, supra.*

Based on the police report summaries proffered by Plaintiffs, the only rape report, prior to the incident[6] herein, involved a woman who accepted, in the early morning hours, a ride-home offer from the Hall of Fame bar and the offeror stopped in route and tried to force her to have sex. The Catoosa police investigated. Rape cases, to be sure, are not always domestic violence situations. The police reports were reported in their entirety. The remaining categories, assault and battery, burglary and domestic violence, were *selective samples* picked by Plaintiffs' attorney.

The Court concludes Plaintiffs have not shown, sufficient to withstand summary judgment, that the City of Catoosa does have a governmental policy of indifference to victims of domestic violence or of dis-

---

4. 22 O.S. §§ 171, 174, contrasted with 22 O.S. § 196.

5. By strict definition, a gender-neutral class, but predominately women.

6. Proof of policy and custom *after* the incident does not impact upon the City's policy on the date of the incident. *Beard v. Mitchell*, 604 F.2d 485, 502 (7th Cir.1979).

crimination against women because of their gender.

In a much stronger Plaintiff's case, *Watson v. City of Kansas City, Kansas*, 857 F.2d 690 (10th Cir.1988), the Court was presented police statistics showing a lower percentage of arrests (16%) for domestic assaults than nondomestic assaults (31%) for an approximate eight-month period, by Kansas City, Kansas police. Summary judgment was granted in favor of the city and the individual police officers. The Tenth Circuit Court of Appeals reversed, observing that "Plaintiff's statistical evidence alone may not be enough to prove the existence of a policy or custom" (citing *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987)), but that need not be decided since plaintiff also presented evidence that the training Kansas City police officers receive encourages officers to "defuse" the situation, arrest being a last resort.[7]

*McKee v. City of Rockwall, Texas*, 877 F.2d 409 (5th Cir.1989), decided July 19, 1989, is apropos. In *McKee*, the District Court denied the individual officers and the city summary judgment. Upon appeal, the Circuit Court dismissed the action as to the individual officers and remanded the case to the District Court because it had no jurisdiction to hear an interlocutory appeal by the city. The Fifth Circuit concluded that the § 1983 claims against the individual officers must be dismissed because the Plaintiff "failed to show the officer's inaction was a consequence of discrimination against a protected minority." [8] *Id.* at 416.

The *McKee* case was also a much stronger plaintiff's case than the present action. Statistical police reports were offered by Plaintiff in opposition to summary judgment. Also, by affidavit, the plaintiff established the city police chief, in response to a query of why the person (plaintiff's boyfriend) who assaulted plaintiff was not arrested, stated "his officers did not like to make arrests in domestic assault cases since the women involved either wouldn't file charges or would drop them prior to trial." *Id.* at 423.

*McKee*, explains that *DeShaney v. Winnebago, supra*, while sounding in due process rather than equal protection, holds that there is no constitutional violation when the most that can be said is state functionaries stood by and did nothing when suspicious circumstances dictated a more active role. *McKee, supra*, treated *Watson* approvingly.

The Court concludes that Plaintiffs' constitutional claims against the City do not meet the tests of *Celotex, Monell, Watson*, and *McKee* and must, accordingly, fail. Therefore, the Court concludes the City of Catoosa's Motion for Summary Judgment as to Plaintiffs' claims (one and two) should be and the same are hereby SUSTAINED.

■ In their third claim Plaintiffs allege "tortious conduct" [9] seeking, as in the first two claims, $10,000,000.00. The Plaintiff Howell filed a claim under the Governmental Tort Claims Act (GTCA) against the City of Catoosa. This was denied as early as August 3, 1987, and no later than August 7, 1987.[10] Since the claim was against the City only,[11] the 180 days (see 51 O.S. 157(B)) within which to thereafter file an action would apply only to the action against the City of Catoosa. Plaintiffs' third claim is against the two individual officers and the City of Catoosa.

Plaintiffs' suit against the City (and Garber and Combs) was filed February 8, 1988, dismissed by Plaintiffs without prejudice

---

**7.** In *Watson*, the plaintiff's and the defendants' versions of the events were significantly different.

**8.** The dissenting opinion observed that, under the majority's reasoning that plaintiff had made out no claim, judgment for the city (on remand) was virtually preordained. *Id.* at p. 416, fn. 2.

**9.** The Court does not reach the issue of whether a claim for "tortious conduct" exists under Oklahoma law, in view of the statute of limitations issue.

**10.** Plaintiffs acknowledge receiving the denial on August 10, 1987 (see Plaintiffs' Brief in Response to Motion for Summary Judgment, p. 12).

**11.** There is no allegation to the contrary; also the letter of denial only referenced the City of Catoosa.

June 22, 1988, and refiled that same day. Plaintiffs' efforts as to the pendent state tort claim against the City are untimely since more than 180 days had expired (185) by February 8, 1988, from August 7, 1987 (date of denial).[12]

Any individual claim against Garber and Combs, on a state tort claim, would have had to be filed within two years from the pivotal events, i.e., May 2, 1987, 12 O.S. § 95, which was done. However, such claim is subject to dismissal under 51 O.S. 163 which provides municipal employees acting within the scope of employment shall not be named as defendants in Governmental Tort Claims Act proceedings. Additionally, it appears Plaintiffs failed to file a prerequisite claim against Garber and Combs. 51 O.S. § 157. Plaintiffs' state tort claims against Garber and Combs are accordingly barred.[13]

Defendants', City of Catoosa, Garber and Combs, Motion for Summary Judgment as to Plaintiffs' Third Claim, a pendent state tort claim, should be and the same is hereby SUSTAINED.

IT IS SO ORDERED.

### JUDGMENT

In accordance with the order entered simultaneously this date, Judgment is hereby entered as follows:

Judgment is entered in favor of Defendants, City of Catoosa, James Enos Combs and Joe Garber, and against Plaintiffs, Sandra Howell, individually and as next friend of Tina Michelle Patterson, a minor. Costs are assessed against the Plaintiffs, each party to pay their own attorney's fees.

---

**12.** Even if computed from the date the notice of denial was received, i.e., August 10, 1987, Plaintiffs' claim is still untimely (182 days). *See also, Willbourn v. City of Tulsa,* 721 P.2d 803 (Okl. 1986).

**13.** Buttressing Plaintiffs' untimely state tort claim is the fact that even if Garber and Combs had been included within Plaintiffs' GTCA claim, denied as late as August 7, 1987, more than 180 days (185) had expired by February 8, 1988.