**Flor Maria SOTO, Plaintiff,**

v.

**Luis CARRASQUILLO,
et al., Defendants.**

Civ. No. 93–1594 (HL).

United States District Court,
D. Puerto Rico.

Jan. 20, 1995.

Jose E. Colon–Santana, Alfredo Marquez–Morales, Juan F. Correa–Luna, Janice M. Gutierrez–Lacourt, Rio Piedras, PR, for plaintiff.

Mabel Ramon–Millan, Dept. of Justice, Federal Litigation Div., San Juan, PR, for defendants.

### OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment [1] by Defendants Ismael Betancourt y Lebrón ("Betancourt") and Carlos Flores ("Flores") in this action for damages pursuant to section 1983.[2] At the time of the tragic incidents which give rise to this action, Betancourt was the Police Superintendent of Puerto Rico and Flores, a police officer, was working at the Rio Grande precinct. Plaintiff is Flor María Soto ("Soto").

On April 17, 1991, Soto went to the Rio Grande police station, claiming to have been physically abused by her husband, Angel Rafael Rodríguez ("Rodríguez"). She was attended to by Flores and officer Luis Carrasquillo ("Carrasquillo"). Carrasquillo is also a defendant in this action but is not a party to this motion for summary judgment. The attending officers did not arrest Rodríguez.

---

1. Defendants' motion is entitled "Motion to Dismiss and/or for Summary Judgment." The Court makes its ruling in this opinion and order only on the motion for summary judgment.

2. 42 U.S.C. § 1983.

Soto alleges that she subsequently went with her two children, aged two and eight, to stay at her mother's house; that on April 19, 1991, Rodríguez appeared at the home of Soto's mother to ask Soto not to imprison him, but she denied that she intended to do so; and that Rodríguez then took the couple's two children with him for the weekend. On April 21, 1991, Soto went to Rodríguez' home to pick up her children and while she was waiting at the front of the house, she heard three gunshots. Rodríguez had shot and killed the two children and then killed himself. Soto alleges that the following two messages were written on the walls of the room where the shootings occurred: "Officer Flores told me that you were going to put me in jail," and "Law 54 only serves to allow women to blackmail men."

Soto alleges that Defendants' actions violated her due process and equal protection rights under the Fifth and Fourteenth Amendments to the Constitution. Specifically, Soto claims that Flores and Betancourt have a custom or policy of treating female victims of domestic violence differently from other victims of violence, thereby discriminating on the basis of gender (Count I); that Flores and Carrasquillo displayed intentional indifference and a reckless disregard to their law enforcement duties, thereby violating Soto's equal protection and substantive due process rights (Count I); that Defendants improperly prepared and altered their report on Soto's visit on April 17, 1991, to the Rio Grande station as part of a conspiracy to deprive Soto of her rights to equal protection (Count II); and that Betancourt deprived Soto of her Fifth and Fourteenth Amendment rights by his failure to instruct, supervise, and discipline police officers with regard to Law 54[3], Puerto Rico's domestic violence prevention act (Count IV).[4]

In their motion for summary judgment, Betancourt and Flores argue that their conduct did not demonstrate a callous or reckless disregard for Soto's constitutional rights

and did not cause Soto's injuries. Soto has opposed the motion for summary judgment. For the reasons set forth below, the Court grants Betancourt and Flores' motion for summary judgment.

### DISCUSSION

#### A. Due Process Claim

At the outset, the Court notes that summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

The initial inquiry in determining whether liability exists under section 1983 has two prongs: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Vout-*

---

3. P.R.Laws Ann. tit. 8, §§ 601–664 (Supp.1991).

4. Soto also alleges in Count III of the complaint that certain unnamed supervisors failed to ensure that Flores and Carrasquillo complied with the procedures of Law 54. In Count V she

alleges that Defendants' conduct constituted negligence and she is therefore entitled to relief under Article 1802 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31, § 5141 (1991).

*our v. Vitale*, 761 F.2d 812, 819 (1st Cir. 1985). In the case before the Court, this first prong is met. The conduct in question was committed by Defendants in their official capacity as members of the police department. The second prong has two distinct elements. First, there must have been a violation of rights secured by the Constitution or laws of the United States. *Voutour*, 761 F.2d at 819. Second, the defendants' conduct must have caused this deprivation of rights. *Id.*

▆ In the case before the Court, Soto claims that her due process rights were violated as a result of Defendants' behavior. The specific injury of which Soto complains is the death of her two children. She claims Defendants' alleged inaction permitted Rodríguez to kill her children. The Court notes, however, that an individual does not have a cause of action under section 1983 for a due process violation based on the injury or death of a family member. *See Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 7–10 (1st Cir. 1986). A parent does not have a cause of action even though the family member's loss is a shocking one such as an unlawful killing. *Pittsley v. Warish*, 927 F.2d 3, 8 (1st Cir. 1991); *Carmona Pacheco v. Betancourt y Lebrón*, 820 F.Supp. 45, 46 (D.P.R.1993). Only the person towards whom the state action was directed, and not those individuals incidentally affected, may bring a section 1983 action for a violation of due process rights. *Manarite v. City of Springfield*, 957

F.2d 953, 960 (1st Cir.1992); *Pittsley*, 927 F.2d at 8; *Hegarty v. Somerset County*, 848 F.Supp. 257, 268 (D.Me.1994); *Natriello v. Flynn*, 837 F.Supp. 17, 19 (D.Mass.1993); *Martínez Correa v. Lopez Feliciano*, 759 F.Supp. 947, 958 (D.P.R.1991).

▆ Soto is bringing this action individually and not in a representative capacity with respect to her deceased children. The harm for which Soto complains is the killing of her children. Because the action was directed towards them, their representative might be able to bring an action on their behalf for a violation of their due process rights.[5] For the actions complained of in her complaint, however, Soto may not bring a valid claim for a violation of her due process rights. Accordingly, the Court hereby dismisses Soto's claim for a violation of her due process rights.

### B. Equal Protection Claim

▆ Soto also alleges that as a result of Defendants' actions she suffered a violation of her federally protected right to equal protection.[6] She claims that Defendants have a policy of treating female victims of domestic violence differently from other victims of violence and that they discriminated against her on the basis of gender. It is a violation of the Equal Protection Clause for a state to selectively deny protective services to a disfavored minority. *DeShaney v. Winnebago County D.S.S.*, 489 U.S. 189, 197 n. 3, 109 S.Ct. 998, 1004 n. 3, 103 L.Ed.2d 249 (1989);

---

**5.** Based on the record currently before the Court, it does not appear that the representative of Soto's children would be able to bring a successful cause of action for a violation of their due process rights. As mentioned above, the state action at issue is an alleged failure by the Puerto Rico police to provide protection from Rodríguez. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County D.S.S.*, 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989). There is a constitutional duty to protect an individual from private violence when the state has taken the individual into its custody and is holding him there against his will. *Id.* at 199–200, 109 S.Ct. at 1005; *Monahan v. Dorchester Counseling Center, Inc.*, 961 F.2d 987, 992 (1st Cir.1992). In this case, Soto's children were not taken into custody by the State and held against their will. Therefore, it does

not appear that a claim on behalf of Soto's children for Defendants' alleged failure to protect them would constitute a violation of the Due Process Clause. Accordingly, the Court will not grant Soto leave to amend the complaint to bring a cause of action on behalf of her children.

**6.** In her equal protection claim, Soto's injury is the death of her children. This is the same injury alleged in her claim for a due process violation. As discussed in part A. above, the First Circuit has held in *Valdivieso Ortiz* and its progeny that an individual does not have a cause of action under section 1983 for a due process violation based on the injury or death of a family member. This Court is unaware, however, of any First Circuit case extending this rule to an equal protection claim. Accordingly, the Court proceeds to the analysis below of Soto's equal protection claim.

*Ricketts v. City of Columbia, Missouri*, 36 F.3d 775, 779 (8th Cir.1994). Moreover, while there is no constitutional right to police protection, a state may not discriminate in providing this protection. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 695 (10th Cir.1988); *Cellini v. City of Sterling Heights*, 856 F.Supp. 1215, 1220 (E.D.Mich.1994); *Thurman v. City of Torrington*, 595 F.Supp. 1521, 1527 (D.Conn.1984).

This Court is unaware of any First Circuit cases in which a domestic violence victim has brought a section 1983 action alleging a violation of equal protection. In other courts, however, a growing number of plaintiffs have turned to section 1983 claims to allege an equal protection violation for a police department's failure to provide protection from domestic violence.[7] Among these cases, the Third, Eighth, and Tenth Circuits have used the following standard in ruling on a motion for summary judgment:

> In order to survive summary judgment, a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, that discrimination against women was a motivating factor, and that the plaintiff was injured by the policy or custom.

*Ricketts*, 36 F.3d at 779 (quoting *Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026, 1031 (3rd Cir.1988)); *Brown v. Grabowski*, 922 F.2d 1097, 1117 (3rd Cir.1990) (quoting *Hynson*, 864 F.2d at 1031); *Watson*, 857 F.2d at 694; *see also Eagleston v. Guido*, 41 F.3d 865, 877–78 (2nd Cir.1994) (Applying this same standard in determining whether a directed verdict was appropriate); *Pinder v. Commissioners of Cambridge*, 821 F.Supp. 376, 384 n. 1 (D.Md.1993); *Hynson v. City of*

*Chester*, 731 F.Supp. 1236, 1240 (E.D.Pa. 1990) (quoting *Hynson*, 864 F.2d at 1031). This standard sets forth the two basic elements that a plaintiff must prove in making out a claim under section 1983. *Ricketts*, 36 F.3d at 779. First, the plaintiff must prove a constitutional violation—in this case, that the Puerto Rico police department has a policy or custom of providing less protection to women victims of domestic violence with an intent to discriminate against women on the basis of their gender. *See id.* Second, the plaintiff must also prove that defendants acting under color of state law caused the constitutional violation—in this case, that the alleged policy caused Soto's injuries. *See id.*

### 1) Policy or Custom

 Under the first prong of the above-mentioned standard, a plaintiff must adduce evidence that would enable a reasonable jury to infer that the police have a policy or custom to provide less protection to victims of domestic violence than to other victims of violence. *Hynson*, 864 F.2d at 1031. It is not necessary that the policy or custom be formal or written. *Monell v. Dep't of Social Serv. of City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Watson*, 857 F.2d at 695; *Pinder*, 821 F.Supp. at 385. A single incident by itself, however, is generally an insufficient basis for inferring the existence of a policy or custom. *McKee v. City of Rockwall, Tex.*, 877 F.2d 409, 415–16 (5th Cir.1989). Furthermore, a plaintiff normally must proffer evidence outside her particular case in order to support the allegation of an unconstitutional policy. *Watson*, 857 F.2d at 695; *Ricketts v. City of Columbia, Mo.*, 856 F.Supp. 1337, 1341 (W.D.Mo.1993), *aff'd*, 36 F.3d 775 (8th Cir.1994); *but see Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th

---

7. *See, e.g., Eagleston v. Guido*, 41 F.3d 865 (2nd Cir.1994); *Ricketts*, 36 F.3d 775; *Brown v. Grabowski*, 922 F.2d 1097 (3rd Cir.1990); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990); *McKee v. City of Rockwall, Tex.*, 877 F.2d 409 (5th Cir.1989); *Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026 (3rd Cir.1988); *Watson*, 857 F.2d 690; *Smith v. City of Elyria*, 857 F.Supp. 1203 (N.D.Ohio 1994); *Cellini*, 856 F.Supp. 1215; *Pinder v. Commissioners of Cambridge*, 821 F.Supp. 376 (D.Md.1993); *Coffman v.*

*Wilson Police Dept.*, 739 F.Supp. 257 (E.D.Pa. 1990); *Howell v. City of Catoosa*, 729 F.Supp. 1308 (N.D.Okla.1990); *Dudosh v. City of Allentown*, 722 F.Supp. 1233 (E.D.Pa.1989); *Bartalone v. County of Berrien*, 643 F.Supp. 574 (W.D.Mich.1986); *Thurman*, 595 F.Supp. 1521; *see also* James T.R. Jones, *Battered Spouses' Section 1983 Damage Actions Against the Unresponsive Police after DeShaney*, 93 W.Va.L.Rev. 251 (1990/1991).

Cir.1990) (In reversing district court's dismissal for failure to state a claim, court held that plaintiff's only allegation implicating equal protection, that a responding officer made disparaging remarks to plaintiff victim, strongly suggested both an intention to treat domestic violence cases less seriously than other assaults and an animus against abused women). The evidence of a plaintiff's own case may be sufficient if these facts indicate an ongoing pattern of police indifference which raises an inference of a policy or custom. *See Thurman,* 595 F.Supp. at 1530. Additionally, a single incident in plaintiff's own case may also be sufficient if there is proof that supervisors or decision-makers have approved or authorized the discriminatory conduct. *Pinder,* 821 F.Supp. at 385.

A plaintiff may attempt to support an allegation of a discriminatory policy with statistical evidence comparing arrest rates in domestic violence cases with arrest rates in nondomestic violence cases. *See e.g. Ricketts,* 36 F.3d at 781–82 (compared number of arrests in domestic abuse cases with non-domestic cases); *McKee,* 877 F.2d at 411–12 (compared number of arrests in assault cases with domestic violence cases); *Watson,* 857 F.2d at 695 (made the same comparison); *Hynson,* 731 F.Supp. at 1240 (plaintiff proffered statistics that demonstrated a lower level of police response for female victims of domestic abuse); *see also Siddle v. City of Cambridge, Ohio,* 761 F.Supp. 503, 511–12 (S.D.Ohio 1991) (Court based its dismissal of the equal protection claim in part on plaintiff's failure to compare domestic violence arrest rates with other crimes). A plaintiff may also show a discriminatory policy by demonstrating that police officers avoid arrests in domestic violence cases. *Watson,* 857 F.2d at 696; *Cellini,* 856 F.Supp. at 1221.

In the case before the Court, Soto has presented no statistical evidence comparing the arrest rates of domestic violence cases with other classes of cases. The only statistical evidence proffered by Soto is included in the deposition testimony of expert witness Mercedes Rodríguez. This witness stated that approximately five percent of domestic violence victims were men and that in 1991 one out of four persons incarcerated under

Law 54 were women. Docket no. 36, exhibit VII, at 39. This witness did not indicate from where she obtained these numbers, did not state how many total Law 54 arrests were made, and did not provide a basis for the figures she was mentioning. Furthermore, she did not compare arrest rates under Law 54 with arrest rates for other cases of abuse or violence. This evidence is not sufficient to create a genuine issue on whether the Puerto Rico police have a policy or custom to provide less protection to victims of domestic violence than to other victims of violence.

Soto has, however, presented other evidence on this issue. Specifically, the deposition testimony of both Flores and Betancourt contain references to this matter. Flores testified that some officers "shied away from" Law 54 cases and that many officers, in order to avoid the procedures involved in making an arrest, tried to persuade domestic violence victims to seek protective orders instead. *Id.,* Exhibit IV, at 39–40, 47–49. Additionally, Betancourt testified that he thought it likely that there was resistance among some members of the police force towards Law 54. *Id.,* Exhibit IX, at 39–40. This evidence is sufficient to create a genuine issue as to whether there was a policy or custom to provide less protection to victims of domestic violence. *See Cellini,* 856 F.Supp. at 1221. Accordingly, Soto has satisfied the first prong of the standard by which a plaintiff may defeat a motion for summary judgment.

### 2) *Discriminatory Intent towards Women*

Under the second prong of the above-mentioned standard, a plaintiff must adduce evidence that would enable a reasonable jury to infer that discrimination against women was a motivating factor behind the policy or custom. *Hynson,* 864 F.2d at 1031. The existence of a discriminatory purpose is crucial in order to successfully show a violation of equal protection rights. *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 272–74, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *Ricketts,* 36 F.3d at 781; *see also Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976) (A

basic principle of equal protection law is that a violation must be traceable to a discriminatory purpose); *Smith v. City of Elyria,* 857 F.Supp. 1203, 1211 (N.D.Ohio 1994) (To succeed on a claim of sex discrimination, a plaintiff must show either that a policy was discriminatory on its face or that it had a disproportionately adverse impact on women and was motivated by a discriminatory intent). A discriminatory purpose is more than intent as an awareness of the consequences. *Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296; *Ricketts,* 36 F.3d at 781. The plaintiff must show that the policy or custom was implemented "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney,* 442 U.S. at 279, 99 S.Ct. at 2296 (footnote omitted); *Ricketts,* 36 F.3d at 781.

■ A plaintiff may rely on objective factors in proving a discriminatory intent. *Feeney,* 442 U.S. at 279 n. 24, 99 S.Ct. at 2296 n. 24. A plaintiff may also use circumstantial evidence to demonstrate ·the intent's existence. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977). Such circumstantial evidence includes patterns of conduct, historical background, substantive departures from normal procedure, and the sequence of events leading up to a specific policy. *Id.* at 266–67, 97 S.Ct. at 564–65. A plaintiff alleging gender-based discrimination should show that a policy which discriminates against victims of domestic violence adversely affects women. *Watson,* 857 F.2d at 696–97. A plaintiff may not, however, rely on an adverse impact alone; she must also prove a discriminatory intent. *Feeney,* 442 U.S. at 274, 99 S.Ct. at 2293; *Davis,* 426 U.S. at 239–42, 96 S.Ct. at 2047–49; *Ricketts,* 36 F.3d at 781; *Spath v. Nat'l Collegiate Athletic Ass'n,* 728 F.2d 25, 28 (1st Cir.1984); *Howell v. City of Catoosa,* 729 F.Supp. 1308, 1310 (N.D.Okla.1990).

■ In the case before the Court, Soto has adduced no evidence that would create a genuine issue as to the existence of either an adverse impact or a discriminatory intent. Soto has presented no statistical evidence that would demonstrate an adverse impact on women. As discussed above, Soto's only statistical evidence is a statement by Mercedes Rodríguez, an expert witness, that approximately five percent of domestic violence victims were men and that in 1991 one out of four persons incarcerated under Law 54 were women. Docket no. 36, exhibit VII, at 39. This witness did not provide a proper basis or source for this information. Moreover, even if she had done so, these figures do not demonstrate a discriminatory intent towards women. It may be that women are incarcerated for Law 54. violations at a rate disproportionately higher than that for men. The police department, however, is not responsible for incarcerating violators; it is responsible for arresting them. A more accurate indicator would be a comparison of the arrest rates for men charged with domestic violence to arrest rates for women charged with domestic violence. *See Ricketts,* 36 F.3d at 781. The little statistical evidence that Soto has proffered is not sufficient to demonstrate the genuine issue as to the existence of a discriminatory intent towards women.

The deposition testimony of Betancourt and Flores is sufficient to create a genuine issue as to the existence of a discriminatory policy towards domestic violence cases. This evidence is not, however, sufficient to demonstrate a genuine issue as to the existence of a discriminatory intent towards women. Flores testified that police officers avoided domestic violence cases. Docket no. 36, Exhibit IV, at 39–40, 47–49. Flores further testified, however, that they did so to avoid the time-consuming court appearances and other procedures that were involved in the prosecution of such cases. *Id.* Betancourt, in his testimony, also indicated that this was the reason for resistance towards domestic violence cases. *Id.,* Exhibit IX, at 41. This testimony may indicate a lack of diligence by some officers with respect to their duties; it does not, by itself, indicate a discriminatory animus towards women.

In her opposition to Defendants' motion for summary judgment, Soto argues and presents evidence that the Puerto Rico police department in 1991 was not complying with the regulations and procedures of Law 54. . Specifically, Soto points to the deposition tes-

timony of police officers Juan Orta Landrau and Carrasquillo as proof of Puerto Rico police officers' lack of understanding of the proper procedure for handling domestic violence cases pursuant to Law 54. Docket no. 36, at 26–33 & exhibits VI, VIII. Additionally, Soto alleges that the police report on her visit to the Rio Grande station on April 17, 1991 contains a falsified signature of her name. Docket no. 36, at 5 & exhibits I, II. Lastly, Soto also alleges that for one year Betancourt failed to meet with the Women's Affairs Commission[8] to discuss Law 54. Docket no. 36, at 36–37 & exhibit X. All of this evidence may be proof that Defendants violated Law 54. This evidence of the violation of a state law is not, however, proof of a discriminatory intent towards women.

Lastly, Soto also proffers statements made by Betancourt in 1990 to the press regarding Law 54. *See* Docket no. 36, at 38–44 & exhibit 12. Betancourt stated that Law 54 needed to be amended because it was not having the hoped-for results and that treatment from psychologists or social workers might be an effective way to prevent domestic violence. Soto's own expert, Mercedes Rodríguez, agreed in her deposition testimony that she thought Law 54 should be amended. Docket no. 36, exhibit VII, at 34. These statements to the press, along with the rest of Soto's evidence, do not constitute evidence that would enable a reasonable jury to infer that discrimination against women was a motivating factor behind a policy or custom of the Puerto Rico police department. Accordingly, the Court finds that Soto has not met the second prong of the standard under which a plaintiff must defeat a motion for summary judgment in a claim alleging an equal protection violation in a domestic abuse case.

### 3) Causation

▪ Under the third prong of the above-mentioned standard, a plaintiff must adduce evidence that would enable a reasonable jury to infer that the plaintiff was injured by the defendants' policy or custom. *Hynson,* 864 F.2d at 1031; *see also City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (The first inquiry of a section 1983 claim is whether there is a "direct causal link" between a policy or custom and the plaintiff's alleged constitutional deprivation). A plaintiff must prove that the allegedly discriminatory custom caused her injury. *Ricketts,* 36 F.3d at 779. Generally, a police officer's failure to make an arrest for a single incident of domestic violence should not be found to have caused a subsequent incident of violence. *Ricketts,* 36 F.3d at 780. Furthermore, a court should consider whether the plaintiff asked the police to arrest the perpetrator of the domestic violence at issue. *See McKee,* 877 F.2d at 415. Inquiries into causation in section 1983 claims should refer to state law tort principles. *Gutierrez–Rodríguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir.1989). Under Puerto Rico law, a negligent defendant will be liable for the consequences attributable to a reasonably foreseeable intervening cause, including the conduct of a third party. *Widow of Andino v. W.R.A.,* 93 P.R.R. 168, 178 (1966); *Marshall v. Perez Arzuaga,* 828 F.2d 845, 848 (1st Cir.1987). An unforeseeable or abnormal act by an intervening third party, however, will break the chain of causality. *Widow of Andino,* 93 P.R.R. at 178; *Perez Arzuaga,* 828 F.2d at 848.

In the case before the Court, Soto stated in her deposition that when she went to the police station on April 17, Carrasquillo asked her if she wanted to have her husband put in jail. Docket no. 33, exhibit III, at 40. Soto further stated that she declined to have him arrested. *Id.* There is no evidence that the police refused a request by her to have her husband arrested. Furthermore, there is no evidence that the police department was aware, prior to April 17, 1991, of other incidents in which Rodríguez had abused Soto. The incident of April 17, was the first time that the police could have arrested Rodríguez

**8.** The Women's Affairs Commission is a public agency whose purpose is to promote women's rights in Puerto Rico. P.R.Laws Ann. tit. 1, §§ 301–310 (1982). Under Law 54, the Commission was responsible for, among other things, promoting education on domestic violence and developing strategies to encourage government agencies to improve their response to the victims of domestic violence. P.R.Laws Ann. tit. 8, § 651 (Supp.1991).

for domestic violence. Thus, it does not appear that Defendants discriminated against Soto's domestic violence case. Even if Defendants did discriminate against Soto's domestic violence case, however, Rodríguez' intervening actions were so shocking as to not be reasonably foreseeable. His murder of the two children constitutes an intervening cause whose unforeseeability and abnormality break the chain of causality to Defendants' conduct. It would be too speculative to find that the non-arrest of Rodríguez for the incidents of April 17, 1991, caused the death of Soto's two children. *See Ricketts,* 36 F.3d at 780. Soto has not adduced evidence that would create a genuine issue as to whether Defendants' conduct was a direct causal link of Soto's injuries. Accordingly, Soto has failed to meet the third prong of the standard for a plaintiff who is alleging an equal protection violation in a domestic violence case to defeat a motion for summary judgment.

## CONCLUSION

In order to defeat Defendants' motion for summary judgment on Soto's equal protection claim, she must adduce evidence to create a genuine issue as to all three of the prongs of the above-mentioned standard. Soto has adduced evidence that creates a genuine issue as to whether the Puerto Rico police have a policy or custom to provide less protection to victims of domestic violence than to other victims of violence. Soto has not adduced sufficient evidence, however, to create a genuine issue of material fact as to whether discrimination against women was a motivating factor behind such a policy and as to whether her injuries were caused by this policy or custom. Because Soto has not adduced sufficient evidence to create a genuine issue as to the second and third prongs of the standard, the Court is compelled to dismiss Soto's claims against Betancourt and Flores for a violation of equal protection on the basis of gender discrimination.

The Court is not unmindful of the magnitude of the tragedy which Soto has had to face. However, not every tragic loss will amount to a constitutional violation. The Court echoes the following sentiments expressed by Judge Coffin in *Valdivieso Ortíz:*

> We emphasize that in denying a cause of action to appellants, we seek neither to minimize the loss of a family member nor to denigrate the fundamental liberty interest in matters of family life that has long been a part of our constitutional fabric. But even an interest of great importance may not always be entitled to constitutional protection.

807 F.2d at 10 (citation omitted). The Court acknowledges the suffering with which Soto is confronted; however, the Court must also acknowledge that Soto's loss does not give rise to a claim for a constitutional violation. The Court, therefore, is compelled to dismiss her section 1983 claims against Defendants Betancourt and Flores.

Soto has also brought a Puerto Rico law claim against Betancourt and Flores pursuant to the Court's supplemental jurisdiction. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed. *Id.* at 726, 86 S.Ct. at 1139; *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990); *Libertad v. Welch,* 854 F.Supp. 19, 35 (D.P.R. 1993). Accordingly, the Court hereby dismisses without prejudice Soto's Puerto Rico law claims against Betancourt and Flores.

WHEREFORE, the Court hereby grants Betancourt and Flores' motion for summary judgment and dismisses Soto's claims against them.

**IT IS SO ORDERED.**